[Crim. No. 8192. Fourth Dist., Div. One. June 15, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
PHILLIP ROGER WATTS, Defendant and Appellant.

**COUNSEL**

Elizabeth Meyer and Stephen J. Perrello, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Karl J. Phaler and Cecilia H. Johnson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BROWN (Gerald), P. J.**—Phillip Roger Watts appeals a judgment entered on jury verdicts convicting him of assault with a deadly weapon (Pen. Code, § 245, subd. (a)) and first degree burglary (Pen. Code, §§ 459, 460). Before trial Watts admitted one prior felony conviction.

The contested issues on appeal are (1) whether the failure of the court properly to instruct the jury on diminished capacity due to voluntary intoxication was reversible error and (2) whether introductory comments made by the court to the jury deprived Watts of a fair trial by misleading the jury on the method of evaluating evidence.

Watts and his victim, Sue, had known each other about 10 years. They had a nine-year-old daughter, Candice. After they had been living together about three years, they argued, and Sue moved out and began dating Ricky, Watts' cousin.

Watts had occasionally visited his daughter at Sue's new residence. On a Friday he telephoned Sue to ask to see Candice the next day, but was told the girl would not be home.

Sue was having a party on that same Friday night. Watts' mother, Lily, telephoned Sue's residence, leaving a message Watts had heard Sue and Ricky had been married and Watts "might be on his way out there." (Lily had talked to her son about 15 minutes earlier and he had asked her if she had heard Ricky and Sue were married.)

Soon Watts arrived at the party. Dancing ceased abruptly at the sound of the ripping or tearing of the back screen door. Watts entered and someone said, "Ann, run. There is Phil." Guests began running upstairs. Ricky left at once to get a police officer.

Sue and two other women barricaded themselves in a bedroom by leaning their backs against its closed, but lockless, door. Watts began kicking at the bedroom door, eventually forcing those inside to step away. He entered the room, looked around, and then struck at Sue, stabbing her in the left breast. As others went for aid, Sue asked Watts why he had done it. "Because you got married," he replied.

In his defense, Watts tendered an explanation of his behavior which, though exculpatory, was incredible. He testified he drank one shot glass

of bourbon before arriving at Sue's to pick up his daughter. When he arrived he followed the smell of marijuana toward the back door. On the way he found a knife sticking in the grass by the sidewalk. He picked it up out of concern for the safety of his child who played there. Unable to place the knife in his pocket, he held it in his hand.

At the back door he saw his cousin, Ann, dancing and then everyone started screaming and scattering. In his own words, "in all of that excitement I put my thumb through the screen, tore it, unlocked it and ran on in." After this reflex breaking and entering, Watts followed Ann upstairs to find out what was happening. He kicked against the bedroom door until pieces of wood flew off it, then shoved his body against it with all his strength. As the door gave way, he had difficulty navigating the scattered door fragments, tripped his right foot on his left heel, stumbled, and accidentally stabbed Sue. According to Watts, Sue said, "You stuck me," at which time he realized what had happened, withdrew the knife from her chest, and said, "I didn't mean to. Excuse me. It was an accident." Unpersuaded, the jury returned convicting verdicts.

Watts claims the court erred in failing to instruct the jury on voluntary intoxication (CALJIC No. 4.21)[1] on its own motion. Instead, he argues, the court instructed the jury on diminished capacity due to abnormal mental or physical condition (CALJIC No. 3.35).

The People respond: the court's failure to instruct the jury on voluntary intoxication (1) was not error, because the evidence of intoxication was so meager as to raise no *sua sponte* duty to instruct on that theory; or, if error, (2) was error invited by Watts' trial counsel, who requested CALJIC No. 3.35; and (3) was nonprejudicial and harmless.

In deciding whether the trial court was obliged on its own to instruct the jury on voluntary intoxication in this case, we are guided by *People* v. *Sedeno,* 10 Cal.3d 703, 716-717 [112 Cal.Rptr. 1, 518 P.2d 913], which

---

[1]As proposed by appellate counsel for Watts, the instruction would read:

"In the crime of . . . burglary . . . of which the defendant is accused [in Count Two of the information], a necessary element is the existence in the mind of the defendant of the specific intent to commit assault with a deadly weapon, a felony, at the time defendant entered the building.

"If the evidence shows that the defendant was intoxicated at the time of the alleged offense, the jury should consider his state of intoxication in determining if defendant had such specific intent.

"If from all the evidence you have a reasonable doubt whether defendant was capable of forming such specific intent, you must give the defendant the benefit of that doubt and find that he did not have such specific intent."

summarizes much of the pertinent law. In that case the Supreme Court stated:

"[W]here evidence of diminished capacity has been presented the court must instruct the jury on the possible relevance of that evidence to finding the existence of the mental elements that are part of the offense of murder [citation], and must also instruct the jury on voluntary manslaughter in the diminished capacity context. [Citations.]

"Unlike the rule obliging the court to instruct on *lesser included offenses* and to give *requested* instructions whenever there is 'any evidence deserving of any consideration whatsoever' [citation], the duty to give instructions, *sua sponte, on particular defenses and their relevance to the charged offense* arises *only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case.* Indeed, this limitation on the duty of the trial court is necessary not only because it would be unduly burdensome to require more of trial judges, but also because of the potential prejudice to defendants if instructions were given on defenses inconsistent with the theory relied upon. 'Appellate insistence upon *sua sponte* instructions which are inconsistent with defense trial theory or not clearly demanded by the evidence would hamper defense attorneys and put trial judges under pressure to glean legal theories and winnow the evidence for remotely tenable and sophistical instructions.' [Citation.]" [Italics added.] (*People v. Sedeno,* 10 Cal.3d 703, 716-717 [112 Cal.Rptr. 1, 518 P.2d 913].)

Earlier cases treat voluntary intoxication in the context of diminished capacity to formulate a specific intent as falling within the latter category of "particular defenses." In *People v. Cram,* 12 Cal.App.3d 37 [90 Cal.Rptr. 393], for example, the court held "Evidence of intoxication which calls for a *sua sponte* instruction must be substantial." (*People v. Cram, supra,* 12 Cal.App.3d 37, 44.) Similarly, courts have found no duty to instruct *sua sponte* on diminished capacity due to intoxication where the evidence of intoxication is "fragmentary" (*People v. Fain,* 70 Cal.2d 588, 596 [75 Cal.Rptr. 633, 451 P.2d 65]), "minimal" (*People v. Spencer,* 60 Cal.2d 64, 87 [31 Cal.Rptr. 782, 383 P.2d 134]), or "minimal, sketchy, [and] speculative" (*People v. Crawford,* 259 Cal.App.2d 874, 877-878 [66 Cal.Rptr. 527]). The approving citation of *People v. Crawford, supra,* by the Supreme Court in *People v. Sedeno, supra,* 10 Cal.3d 703, confirms the vitality of these authorities. ■ We therefore hold the duty to give CALJIC No. 4.21 *sua sponte* arises only if it appears the defendant is

relying on the defense of voluntary intoxication, or if there is substantial evidence of voluntary intoxication and the defense is not inconsistent with the defendant's theory of the case.

Manifestly, the court was under no duty to instruct the jury without request on voluntary intoxication in this case. First, Watts was not relying on the defense of voluntary intoxication, but rather on a theory of innocent entry and accidental stabbing. This is revealed by the surprise of his trial counsel at the court's suggestion to instruct *sua sponte* on voluntary intoxication: "THE COURT: Let me ask you this, [Counselor]. I take it that your feeling is that 3.35 on diminished capacity should probably be given? DEFENSE COUNSEL: Excuse me? THE COURT: 3.35 on diminished capacity should probably be given; is that right? DEFENSE COUNSEL: That's a good question. THE COURT: I feel obligated sua sponte to give it unless the Defense makes a strong objection on the ground of strategy. The man has indicated that he drank a certain amount of whiskey although he has replied that he felt he was in control of himself. That may be a conclusion, so I think I shall give that." Watts' counsel requested CALJIC No. 3.35 rather than No. 4.21 apparently out of deference to this suggestion by the court to give the former, inappropriate instruction.[2]

---

[2]The People unmeritoriously assert, on the basis of the quoted colloquy and request, any instructional error was "invited error." As the Supreme Court stated in *People* v. *Graham*, 71 Cal.2d 303, 319-320 [78 Cal.Rptr. 217, 455 P.2d 153]: "In the absence of a clear tactical purpose, the courts and commentators eschew a finding of the 'invited error' that excuses a trial judge from rendering full and correct instructions on material questions of law. Witkin has stated that when the trial court has the duty to instruct, *sua sponte,* on the rules of law necessarily involved in a case, erroneous instructions are reviewable 'though invited by the defendant's own neglect or mistake.' (Witkin, Cal. Criminal Procedure, § 746, pp. 719-720.) As the court forcefully stated in *People* v. *Keelin* (1955) 136 Cal.App.2d 860, 874 . . ., 'Nevertheless, error is nonetheless error and is no less operative on deliberations of the jury because the erroneous instruction may have been requested by counsel for the defense. After all, it is the life and liberty of the defendant in a case such as this that is at hazard in the trial and there is a continuing duty upon the part of the trial court to see to it that the jury are properly instructed upon all matters pertinent to their decision of the cause.' Accordingly, if defense counsel suggests or accedes to the erroneous instruction because of neglect or mistake we do not find 'invited error'; *only if counsel expresses a deliberate tactical purpose in suggesting, resisting, or acceding to an instruction,* do we deem it to nullify the trial court's obligation to instruct in the cause.

"This formulation correctly resolves the competing considerations of the underlying policies relevant to the problem. On the one hand, the attorney should exercise control over his case and bear responsibility for tactical decisions reached in the course of his representation. On the other hand, the Legislature has indicated that instructions which affect the substantial rights of a defendant should be subject to review, even though his counsel, through neglect or mistake, has failed to object to them. Indeed, this court has held that a trial judge must on his own motion fully and correctly instruct the jury on

Second, there was no evidence of intoxication whatsoever. Watts merely testified he drank one shot glass of bourbon before he drove to the scene of the crime. He did not testify he was "drunk" or "intoxicated" or even "under the influence of alcohol" (see *People* v. *Miller,* 57 Cal.2d 821, 830 [22 Cal.Rptr. 465, 372 P.2d 297]). "The mere fact that a defendant may have been drinking prior to the commission of a crime does not establish intoxication or require the giving of a *requested* instruction . . ." (*People* v. *Miller, supra,* at pp. 830-831; italics added), much less a *sua sponte* instruction.

Finally, the defense of diminished capacity due to voluntary intoxication precariously approached inconsistency with Watts' major defense. At trial, Watts took the stand and related his version of critical events with particularity not easily reconciled with intoxication of a degree which would diminish one's capacity to form a specific intent. And his trial counsel sought to convince the jury Watts was a more credible witness than the wounded victim. For all these reasons we conclude a *sua sponte* instruction on voluntary intoxication was not demanded by the evidence, and its omission was not error.

Watts contends we are precluded from making these observations by *People* v. *Coyne,* 92 Cal.App.2d 413, 416-417 [206 P.2d 1099], which he cites for the proposition once a judge determines the evidence is sufficient to require an instruction on intoxication, he must give the proper one (see also *People* v. *Bowen,* 22 Cal.App.3d 267, 293 [99 Cal.Rptr. 498]). Additionally we note the Supreme Court's caution in *People* v. *Wilson,* 66 Cal.2d 749, 763 [59 Cal.Rptr. 156, 427 P.2d 820]: "Doubts as to the sufficiency of the evidence to warrant instructions should be resolved in favor of the accused." Although *Wilson* concerned requested instructions, the admonition is equally applicable, we think, to evidence supporting *sua sponte* instructions.

Yet here there is not even any evidence of intoxication to entertain our doubts. The record before us does not reveal the application of the principles set forth in *People* v. *Sedeno, supra,* 10 Cal.3d 703, to the

general principles of law, regardless of the failure of defense counsel to offer such instructions or to object to their omission." [Italics added.] (*People* v. *Graham,* 71 Cal.2d 303, 319-320 [78 Cal.Rptr. 217, 455 P.2d 153].)

Obviously, Watts' counsel expressed no deliberate tactical purpose in acceding to CALJIC No. 3.35 as the appropriate instruction on voluntary intoxication.

evidence presented. Rather, it appears the court's conclusion to instruct on voluntary intoxication was the expression of an overly generous juridical attitude toward instructions: "THE COURT: . . . I've always taken a liberal view with the instructions. So far as the Court has been able to see, the instructions are primarily for the appellate courts, so I give anything which is applicable and *I tend to give a wider set of instructions than I think are really reasonably applicable to the case,* but the appellate courts seem very concerned [with] instructions and the bulk of reversals seem to come [on] these issues, so in an abundance of caution, I generally give an instruction rather than not give it." [Italics added.]

■ Implicit in this attitude is an erroneous assumption superfluous instructions are entirely harmless. Yet unwarranted instructions may be incompatible with primary defense theories (see *People* v. *Sedeno, supra,* 10 Cal.3d 703, 716) and thus hamper defense strategy. At the very least they may distract the jury from, and diminish the impact of, other more critical instructions. In the present case an unwarranted instruction on diminished capacity due to "some abnormal mental or physical condition" (CALJIC No. 3.35) was given in lieu of an unwarranted instruction on diminished capacity due to voluntary intoxication (CALJIC No. 4.21). Although we consider the effect harmless in this case, we cannot approve the philosophy which led the court to conclude under the factual setting of this case any instruction on diminished capacity was appropriate without request.

As we have pointed out, the record suggests the court did not, in its discretion, examine the evidence in light of the appropriate legal standard for giving *sua sponte* instructions. Under such circumstances, we see no reason why the trial court's "judgment on this question would seem to settle all doubts in the matter." (*People* v. *Coyne, supra,* 92 Cal.App.2d 413, 417.)

■ Watts' second specification of error also does not require reversal. He attacks the following preliminary comment made by the court to the jury: "In my judgment and the way I would approach this case, ladies and gentlemen, is this: I would simply make up my mind as to what happened factually on the 11th day of April nineteen hundred and seventy-five. What do you make of that particular incident? Now, when you have decided what happened and who are the participants, you may then consider the law which I am going to give you as to how you classify that event and classify the conduct of the Defendant and in doing so, certain of the conduct which has been urged but you found not to be true

will be included in instructions which you may disregard and you will consider only the instructions which apply to the state of the facts as you find them to be."

In suggesting the jury not consider the instructions until after they determined what happened factually, Watts argues, the court rendered CALJIC No. 2.00 ineffectual. That instruction defines direct and circumstantial evidence as means of proof.

Watts was not deprived of a fair trial by the court's remarks. Both before the challenged statement and after, the court emphasized its preliminary comments need not be followed because they were not official guidelines. The jury was in no way advised how it should consider particular evidence. In fact, the court specifically cautioned: "Now, I have not intended by anything I have said or done or by any questions that I may have asked to intimate or suggest what you should find to be the facts on any question submitted to you or that I believe or disbelieve any witnesses. If anything I have done or said has seemed to so indicate, you will disregard it and form your own opinion."

Even assuming the jury was misdirected by the court's prefatory remark, in our opinion it is not reasonably probable a result more favorable to Watts would have been reached in the absence of the error (*People* v. *Watson,* 46 Cal.2d.818, 836 [299 P.2d 243]) and a miscarriage of justice did not result (Cal. Const., art. VI, § 13).

Watts and the People agree the prior felony conviction admitted before trial should be stricken from the abstract of judgment because reference to it was not included in the oral pronouncement of judgment (*People* v. *Mesa,* 14 Cal.3d 466, 470, 472 [121 Cal.Rptr. 473, 535 P.2d 337]; *In re Candelario,* 3 Cal.3d 702, 706 [91 Cal.Rptr. 497, 477 P.2d 729]).

The reference to the prior felony conviction is ordered stricken from the abstract of judgment. Judgment affirmed.

Ault, J., and Cologne, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 12, 1976.