[No. E050395. Fourth Dist., Div. Two. June 28, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
CARL WAYNE ELLISON, Defendant and Appellant.

## COUNSEL

Phillip I. Bronson, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Gil Gonzalez, Randy Einhorn and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RAMIREZ, P. J.**—Following a jury trial, defendant was convicted of unlawfully carrying a concealable firearm in a vehicle (Pen. Code, § 12025, subd. (a)(1)), but acquitted of three other charges. On appeal, defendant challenges his conviction on the grounds that (1) Penal Code section 12025, subdivision (a)(1), infringes on his right to bear arms, as guaranteed by the Second Amendment of the federal Constitution, and (2) his conviction was the result of prosecutorial misconduct during summation to the jury. We affirm.

### BACKGROUND

Because defendant was acquitted of the counts relating to the incident leading up to his detention and arrest for carrying a concealed firearm in a vehicle, we will not recount all of the facts relating to those counts.

On January 20, 2009, Deputy Cox was dispatched to an address in Corona based on a report that an ex-roommate, who had made threats earlier, was

parked in his vehicle outside the reporting party's residence, and that a firearm was involved. The deputy and her partner approached the vehicle, a small pickup truck, from behind, and found defendant asleep in the driver's seat in the cab of the truck.

Deputy Cox knocked on the window, and instructed defendant to show his hands. The deputy asked defendant if he had a gun, and defendant replied in the affirmative, reaching toward the floorboard. The deputy instructed defendant not to reach down and to show his hands; then she removed him from the vehicle. Under the floormat on the driver's side of the cab of the truck, the deputy found a small, loaded Beretta .25-caliber semiautomatic handgun. Defendant was placed in a patrol car.

After detaining defendant in the patrol car, the deputy interviewed Eric H., the reporting party and defendant's former roommate, who was very nervous. Eric described threats made by defendant. The deputy then interviewed Cesar S., who also reported threats made by defendant. Defendant was charged with assault with a firearm (Pen. Code, § 245, subd. (a)(2); count 1) and criminal threats (Pen. Code, § 422; count 2), respecting Cesar S. As to each count, it was further alleged that defendant personally used a firearm (Pen. Code, § 12022.5, subd. (a)), and as to count 2, it was further alleged the crime was a hate crime (Pen. Code, § 422.75, subd. (a)). The information also alleged that defendant unlawfully carried a concealed firearm that was loaded (Pen. Code, § 12025, subd. (b)(6); count 3), and criminal threats as to Eric H. (Pen. Code, § 422; count 4).

Following a trial by jury, defendant was acquitted of counts 1, 2, and 4, and found guilty of count 3. The jury made a true finding that defendant was not listed as the registered owner of the firearm[1] and that it was loaded within the meaning of Penal Code section 12031, subdivision (g). He was placed on informal probation for two years and timely appealed.

## DISCUSSION

### A. *Penal Code Section 12025, Subdivision (a)(1), Is Constitutional*

■ Defendant challenges his conviction for carrying a concealed weapon within a vehicle, on the ground that the statute is unconstitutionally overbroad, infringing on his constitutional right to bear arms under the Second Amendment of the United States Constitution, because it makes no provision for an individual's right to self-defense. We conclude that the conviction of

---

[1] The parties stipulated that the Department of Justice records did not show the gun was registered to anyone.

possession of a concealed weapon within a vehicle does not contravene defendant's Second Amendment rights, as interpreted by the United States Supreme Court in *District of Columbia v. Heller* (2008) 554 U.S. 570 [171 L.Ed.2d 637, 128 S.Ct. 2783] (*Heller*).[2]

■ The Second Amendment of the United States Constitution states, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." (U.S. Const., 2d Amend.) The Second Amendment protects an individual's right to possess and carry weapons in case of confrontation. (*Heller, supra*, 554 U.S. at pp. 592, 595.) The Second Amendment is fully applicable to the states by the due process clause of the Fourteenth Amendment. (*McDonald v. City of Chicago* (2010) 561 U.S. ___ [177 L.Ed.2d 894, 130 S.Ct. 3020].)

Neither *Heller* nor *McDonald* discussed the applicable standard of review; however, some cases have suggested that an "intermediate scrutiny" (see *U.S. v. Miller* (W.D.Tenn. 2009) 604 F.Supp.2d 1162, 1169, 1171–1172) or "heightened scrutiny" is applicable under the Second Amendment (see *U.S. v. Masciandaro* (4th Cir. 2011) 638 F.3d 458, 463; see also *Nordyke v. King* (9th Cir. 2011) 2011 U.S.App. Lexis 8906, p. *11), while at least one court would apply strict scrutiny to all gun-control regulations. (See *U.S. v. Engstrum* (D. Utah 2009) 609 F.Supp.2d 1227, 1231–1232.) The *Nordyke* court observed that the Supreme Court's reasoning in *Heller* and *McDonald* suggests that heightened scrutiny applies only if a regulation substantially burdens the right to keep and to bear arms for self-defense. (*Nordyke*, at p. *12.) Application of strict scrutiny to every gun-control regulation would be inconsistent with *Heller*'s reasoning because *Heller* "sorted such regulations based on the burden they imposed on the right to keep and to bear arms for self-defense" (*Nordyke*, at p. *16), and referred to "presumptively lawful" gun regulations (*Heller, supra*, 554 U.S. at pp. 626–627 & fn. 26).

■ Absent any specific direction from the Supreme Court, we adopt the "intermediate scrutiny" standard, because the statute, on its face, does not completely prohibit or unduly burden the right of law-abiding persons to bear arms. The law at issue in *Heller* totally banned handgun possession in the home, and required that any lawful firearm in the home be disassembled or bound by a trigger lock at all times, rendering it inoperable. (*Heller, supra*, 554 U.S. at p. 628.) It concluded that a total ban on the possession of handguns in the home, without an exception for self-defense, was unconstitutional. (*Id.* at p. 630.)

---

[2] Although defendant did not object on this ground in the trial court, we will address the claim on the merits because it is " 'a pure question of law which is presented by undisputed facts.' " (*People v. Hines* (1997) 15 Cal.4th 997, 1061 [64 Cal.Rptr.2d 594, 938 P.2d 388], quoting *Hale v. Morgan* (1978) 22 Cal.3d 388, 394 [149 Cal.Rptr. 375, 584 P.2d 512].)

■ However, the Supreme Court observed that the right is not unlimited. (*Heller, supra,* 554 U.S. at pp. 595, 626.) The "right [is] not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." (*Ibid.*) The court acknowledged that the majority of 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment. (554 U.S. at pp. 595, 626.) It also cautioned that its holding should not be taken to cast doubt on long-standing prohibitions including the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms. (*Id.* at pp. 626–627.) In so stating, the court indicated its list was not an exhaustive analysis, but merely examples of "presumptively lawful regulatory measures." (*Id.* at p. 627, fn. 26.)

Shortly after *Heller* was decided, the First Appellate District, Division One, concluded that Penal Code section 12025 was constitutional in the face of challenges identical to those posited here in *People v. Yarbrough* (2008) 169 Cal.App.4th 303 [86 Cal.Rptr.3d 674]. In that case, the reviewing court determined that Penal Code section 12025, subdivision (a), does not broadly prohibit or even regulate the possession of a gun in the home for lawful purposes of confrontation or self-defense, as was the case with the District of Columbia law at issue in Heller. (*Yarbrough,* at p. 313.) The court reasoned that unlike possession of a gun for protection within a residence, carrying a concealed firearm presents a recognized " 'threat to public order,' " and is " ' "prohibited as a means of preventing physical harm to persons other than the offender." ' " (*Id.* at p. 314, quoting *People v. Hale* (1974) 43 Cal.App.3d 353, 356 [117 Cal.Rptr. 697].)

■ *Yarbrough* noted that *Heller* "specifically expressed constitutional approval of the accepted statutory proscriptions against carrying concealed weapons" (*Yarbrough,* 169 Cal.App.4th at p. 314, citing *Heller, supra,* 554 U.S. at p. 626), before concluding that the prohibition on the carrying of a concealed weapon without a permit continues to be a lawful exercise by the state of its regulatory authority notwithstanding the Second Amendment. (*Yarbrough,* at p. 314.) We agree.

The United States Supreme Court expressly included long-standing prohibitions against carrying concealed weapons in its nonexhaustive list of presumptively lawful restrictions on the right to bear arms. (*Heller, supra,* 554 U.S. at p. 626.) Carrying a concealed or concealable firearm, without a permit, in a vehicle, presents a " 'threat to public order' " that may be " ' "prohibited as a means of preventing physical harm to persons other than the offender." [Citation.]' " (*Yarbrough, supra,* 169 Cal.App.4th at p. 314.) As

the court in *Yarbrough* observed, "[a] person who carries a concealed firearm on his person or in a vehicle, 'which permits him immediate access to the firearm but impedes others from detecting its presence, poses an "imminent threat to public safety . . . ." ' " (*Ibid.*, quoting *People v. Hodges* (1999) 70 Cal.App.4th 1348, 1357 [83 Cal.Rptr.2d 619] [holding Pen. Code, § 12025, subd. (a) does not violate substantive due process rights].) Penal Code section 12025, subdivision (a), is a valid limitation on the right to bear arms.[3]

Of course, not all prohibitions on concealed weapons are presumptively constitutional, as defendant asserts, citing *Peruta v. County of San Diego* (2010) 678 F.Supp.2d 1046. In that case, the United States District Court for the Southern District of California denied the County of San Diego's motion to dismiss a federal civil rights action challenging the constitutionality of Penal Code section 12050. The action arose when the county denied his application for a concealed weapon permit on the ground he did not have good cause and was not a resident of the county, statutory requirements for a permit. The court determined that the plaintiff's complaint appeared to state a claim upon which relief could be granted because the requirement of showing "good cause" before a permit could be issued infringed on his right to possess and carry weapons in case of confrontation. (678 F.Supp.2d at p. 1055.)

However, the court in *Peruta* did not hold that the statute was unconstitutional, it merely held that the plaintiff's first cause of action for violation of the Second Amendment appeared to state a claim upon which relief can be granted, denying the defendant's motion to dismiss the plaintiff's Second Amendment claim. (*Peruta, supra,* 678 F.Supp.2d at pp. 1055–1056.) The court specifically held that it was not asked to, and did not, decide whether Penal Code section 12050 was constitutional. (678 F.Supp.2d at p. 1056.) It noted that the government was required to show that the challenged law was constitutional by demonstrating that it is either narrowly tailored to serve a compelling state interest, or necessary to further an important governmental interest. However, it held that the government had failed to defend the constitutionality of the statute under either of the heightened levels of scrutiny. (*Id.* at p. 1055.)

---

[3] In the wake of *Heller*, other California gun-control statutes have been found to be constitutional: Penal Code section 12021, subdivision (c) (prohibiting convicted felons from possessing firearms) (*People v. Delacy* (2011) 192 Cal.App.4th 1481, 1486–1498 [122 Cal.Rptr.3d 216]; *People v. Flores* (2008) 169 Cal.App.4th 568, 575–577 [86 Cal.Rptr.3d 804]); Penal Code section 12021, subdivision (e) (possession of firearm by a person under 30 who has a juvenile record) (*People v. Villa* (2009) 178 Cal.App.4th 443, 448–449 [100 Cal.Rptr.3d 463]); Penal Code section 12031, subdivision (a) (carrying a loaded firearm in a vehicle on a public street) (*Flores,* at pp. 575–577; *Villa,* at p. 450); and Penal Code section 12280, subdivisions (b) and (c) (possession of assault weapon and possession of a .50-caliber BMG (Browning machine gun) rifle) (*People v. James* (2009) 174 Cal.App.4th 662, 674–677 [94 Cal.Rptr.3d 576]).

The present case does not involve a statutory requirement of showing "good cause" and residency as preconditions for a concealed weapon permit. The present case also does not involve a challenge to the adequacy of a complaint by way of a motion to dismiss, where the factual allegations are treated as true. (*Peruta, supra,* 678 F.Supp.2d at p. 1049.) Taking the plaintiff's allegations as true, the court agreed with the plaintiff that his complaint appeared to state a claim because the imposition of a "good cause" requirement before a concealed weapon permit could be issued infringed on the right to possess and carry weapons in case of confrontation. (*Id.* at p. 1055.) Because *Peruta* is legally, factually, and procedurally distinguishable, it does not advance defendant's argument.

■ Defendant argues that the lack of an alternate way to exercise his Second Amendment right renders Penal Code section 12025, subdivision (a), unconstitutional. This is incorrect. The statute punishes the carrying of a concealed weapon as a felony only where two conditions have been met: (a) the weapon is loaded or ammunition is accessible, and (b) the person is not listed with the Department of Justice as the registered owner. (§ 12025, subd. (b)(6)(A) & (B).) Carrying a loaded firearm within a vehicle is not a crime if the firearm is either locked in the vehicle's trunk, or in a locked container, other than the utility or glove compartment, in the vehicle. (Pen. Code, § 12026.1, subd. (a)(1).) The fact that defendant is required to obtain a permit pursuant to Penal Code section 12050 to carry a concealed firearm does not compel the conclusion that he is deprived of an alternate means of exercising his right to bear arms.[4]

■ Defendant further argues that because Penal Code section 12031 prohibits the carrying of a loaded firearm in a vehicle on a public street, he has no alternative means of exercising his Second Amendment rights. This is incorrect also. Penal Code section 12031 includes numerous exceptions to the prohibition against carrying a loaded weapon in a vehicle on a public street which preclude prosecution for lawful possession of a concealed or concealable weapon. (Pen. Code, § 12031, subds. (b)–(d).) Notably, obtaining a proper license or permit pursuant to Penal Code section 12050 renders the act of carrying a concealed or concealable firearm lawful under both Penal Code section 12031, subdivision (b)(6), and section 12027, subdivision (j). There are alternate means by which defendant can exercise his Second Amendment rights.

■ The Second Amendment protects the right of law-abiding, responsible citizens to use arms in defense of hearth and home. (*Heller, supra,* 554 U.S. at

---

[4] We take judicial notice of the subsequent history of the *Peruta* decision in which the defendant County of San Diego prevailed in its motion for summary judgment after the United States District Court concluded that Penal Code sections 12031 and 12050 did pass constitutional muster. (*Peruta v. County of San Diego* (S.D.Cal. 2010) 758 F.Supp.2d 1106.)

p. 635.) But Penal Code section 12025, subdivision (a), does not impair the ability of a person to defend "hearth or home" because it does not prohibit the possession of loaded firearms in the home. Nor does it constitute a blanket prohibition against carrying a firearm for self-defense because it exempts from prosecution the carrying of a concealable firearm with a permit, and the carrying of a firearm in a locked trunk or other locked container, among other exceptions. The statute is narrowly tailored to protect the public by prohibiting only the unregistered carrying of concealable firearms in a vehicle. Because of its narrow focus, it is not overbroad. Penal Code section 12025, subdivision (a), does not substantially burden defendant's exercise of his Second Amendment right, and is constitutional.

B. *Prosecutorial Misconduct During Arguments to the Jury Were Cured by Cautioning the Jury and Correct Instructions as to the Law.*

Defendant argues that his conviction must be reversed due to prosecutorial misconduct during arguments to the jury. While we agree that the prosecutor's statements constituted misconduct, we conclude the error did not infect the outcome because the jury was correctly instructed on the burden of proof and the trial court gave curative instructions, reminding the jury to follow the instructions given by the court.

1. *Procedural Backdrop*

Prior to summation, the court instructed the jury on the principles relating to the presumption of innocence and the requirement of proof beyond a reasonable doubt. Subsequently, the prosecutor argued the People's case and made several incorrect references to the reasonable doubt standard, to which defendant timely objected. The prosecutor argued: "[Prosecutor:] The basis for reasonable doubt. This seems obvious, but [it] is whether the doubt that you have is reasonable. There's all kinds of possibilities. The Judge told you that it's not beyond all possible doubt. Is it possible that Cesar S[.] and Eric H[.] somehow conspired together when nothing happened to call 911 and report a friend for making threats and pointing a gun at their face? And the gun is found? Yeah, it's possible. There's lots of possibilities, but it's not reasonable. People don't do that when nothing happens with nothing to provoke it. It's—you have to look at whether or not it's reasonable or unreasonable for the defendant to be innocent."

When defendant objected, the court stated that the jury was admonished to just follow the instructions. The prosecutor continued with argument, stating: "[Prosecutor:] There's—what it is, is the jury instructions tell you that if there's two reasonable interpretations of the evidence, one points to guilt, one points to innocence. You have to vote not guilty because that's fair, because that means it's reasonable that the defendant is innocent. . . ."

This prompted another objection that the prosecutor was misstating the law, to which the trial court admonished the jury, "Well, you only vote guilty if you're convinced beyond a reasonable doubt." Immediately thereafter, the prosecutor resumed her argument: "[Prosecutor:] It's not this unattainable standard. You've got to look at what's reasonable and what's unreasonable, when you look at all the evidence. So, for instance, if I'm—if you look at this water bottle, it's possible there's something in here—"

Defendant objected again, this time on the ground the argument constituted misconduct and watered down the burden of proof. The trial court overruled the objection. After the defense argued, the prosecutor presented rebuttal argument, in which she argued: "[Prosecutor:] During jury selection, we also talked about using the evidence that's presented to you in trial and not what you don't have. And reasonable doubt doesn't equate to 'I want more evidence.' Reasonable doubt is with the evidence that you're given. Beyond a reasonable doubt is what the evidence that you're given [*sic*]. Is it reasonable that the defendant's innocent."

Defendant objected again that the argument misstated the law, and the court explained, "That's incorrect. It's not a question of whether or not it's reasonable. Reasonable would be whether or not we want to go to a particular restaurant. The question is whether or not the charges have been proven beyond a reasonable doubt." The prosecutor resumed, stating: "[Prosecutor:] Okay. So look at the evidence that has been presented and whether that evidence—I'm sorry if I misspoke. That evidence proves each of the elements beyond a reasonable doubt."

Defendant objected again, on the ground the prosecutor misstated the law. The court stated, "At this point, I'll just ask the jury to rely on the instruction to decide the case as to whether or not there is sufficient proof for any charge."

2. *Legal Principles and Analysis*

██ A prosecutor who uses deceptive or reprehensible methods to persuade the jury commits misconduct, and such actions require reversal under the federal Constitution when they infect the trial with such unfairness as to make the resulting conviction a denial of due process. (*People v. Friend* (2009) 47 Cal.4th 1, 29 [97 Cal.Rptr.3d 1, 211 P.3d 520], citing *Darden v. Wainwright* (1986) 477 U.S. 168, 181 [91 L.Ed.2d 144, 106 S.Ct. 2464].) Under state law, a prosecutor who uses such methods commits misconduct even when those

actions do not result in a fundamentally unfair trial. (*Friend,* at p. 29, citing *People v. Alfaro* (2007) 41 Cal.4th 1277, 1328 [63 Cal.Rptr.3d 433, 163 P.3d 118].) A prosecutor engages in misconduct by misstating facts or referring to facts not in evidence, but he or she enjoys wide latitude in commenting on the evidence, including urging the jury to make reasonable inferences and deductions therefrom. (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 95 [17 Cal.Rptr.3d 710, 96 P.3d 30].)

 It is improper for the prosecutor to misstate the law generally, and in particular, to attempt to lower the burden of proof. (*People v. Williams* (2009) 170 Cal.App.4th 587, 635 [88 Cal.Rptr.3d 401], citing *People v. Hill* (1998) 17 Cal.4th 800, 829 [72 Cal.Rptr.2d 656, 952 P.2d 673].) However, we do not reverse a defendant's conviction because of prosecutorial misconduct unless it is reasonably probable the result would have been more favorable to the defendant in the absence of the misconduct. (*People v. Barnett* (1998) 17 Cal.4th 1044, 1133 [74 Cal.Rptr.2d 121, 954 P.2d 384]; *Williams,* at p. 635.)

In the present case, the prosecutor improperly attempted to lessen the People's burden of proof by arguing to the jury that the beyond-reasonable-doubt standard required the jury to determine whether defendant's innocence was reasonable. This argument, which persisted after multiple objections and curative instructions from the court reminding the jury to follow its instructions on the burden of proof, was improper. However, the error does not require reversal.

First, the jury was properly instructed on the principles of law relating to the presumption of innocence and the requirement of proof beyond a reasonable doubt. Second, prior to making the improper argument, the prosecutor twice reminded the jury that "[t]he law comes from the Judge." Third, after the defense objections to the prosecutor's argument, the court gave a curative instruction, admonishing the jury to follow the instructions. Finally, the jury acquitted defendant of the three most serious charges, demonstrating that it understood the applicable burden of proof as it was instructed, and applied it to defendant's advantage as to the acquitted counts.

Additionally, we note that during the defense case-in-chief, defendant admitted carrying the loaded firearm in his vehicle and admitted it was not registered. Under these circumstances, where the defendant admitted the elements of the crime, it is not reasonably probable that a result more favorable to the defendant would have been reached in the absence of the error. (*People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; see also *People v. Barnett, supra,* 17 Cal.4th at p. 1133.)

## DISPOSITION

The judgment is affirmed.

Hollenhorst, J., and Miller, J., concurred.