Filed 12/15/15  P. v. Springer CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E061168 |
| v. | (Super.Ct.No. RIF1302409) |
| ROY GENE SPRINGER, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Mac R. Fisher, Judge.

Affirmed.

Robert Booher, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, and Adrianne Denault, Karl T. Terp and Daniel J. Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

1

Following a jury trial, defendant and appellant Roy Gene Springer was convicted of second degree murder (Pen. Code,[1] § 187, subd. (a)) and assault by means of force likely to cause great bodily injury (§ 245, subd. (a)(4)). The jury also found that defendant inflicted great bodily injury on the victim, causing him to become comatose. (§ 12022.7, subd. (b).) The trial court sentenced defendant to state prison for a total term of 15 years to life. On appeal, defendant contends: (1) defense counsel provided ineffective assistance by failing to object to prosecutorial misconduct in closing argument; (2) the trial court erred in failing to instruct the jury on both unconsciousness due to voluntary intoxication and accident; and (3) the doctrine of cumulative error merits reversal. We affirm.

## I. FACTS

On May 4, 2013, around 5:30 p.m., two people in two different cars driving near the intersection of Iris and Perris Boulevards in Moreno Valley saw defendant punching Jose Ledesma (the victim) in the head, knocking him down to the ground and causing his head to slam onto the concrete. While the victim was lying on the ground, defendant kicked him in the head (approximately three times, soccer style), took off his shirt; threw the shirt to the ground, and did what appeared to be a victory dance.

As a result of the attack, the victim suffered a number of impact injuries to his face and head, including a large fracture that went from the left parietal bone, across the top of

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

the skull, to the right side of the frontal bone on the right part of his skull. This caused injury to his brain tissue, swelling in and around the brain, and increased pressure in the head. The victim was unconscious at the scene of the attack. When he woke up in the hospital, he told the police that no one had assaulted him. However, he later slipped into a coma due to the bleeding and pressure in his head, was declared brain dead, and removed from life support.

Defendant was interviewed by the investigating detective. During that interview, defendant claimed he had gone looking for Gilbert Gutierrez, who had punched one of defendant's friends. When defendant confronted Gutierrez, the victim was there. Defendant said he was going after Gutierrez when the victim came at him (defendant) and then defendant "slammed" the victim, who "just went over." Defendant claimed he just wanted "to get [the victim] out of the way." Defendant denied hitting the victim, claiming that he (the victim) was drunk and "[j]ust [fell] over" while defendant was trying to fight Gutierrez. Defendant also denied kicking the victim; however, defendant acknowledged the possibility of hitting the victim in order to get him out of the way. Defendant admitted that his hair was in a pony tail and that he had taken his shirt off. He stated that he could not remember the events because he "was too damn intoxicated." He claimed to have consumed 80 ounces of beer and a fifth of whiskey.

## II. DISCUSSION

### A. Ineffective Assistance of Counsel.

Defendant argues the prosecutor's closing statement that "proof beyond a reasonable doubt is whether '[i]t's logical, it's reasonable, it makes sense, and none of the evidence that's been presented in this case contradict any of it'" mischaracterized the burden of proof by "communicat[ing] to the jury that the People's burden was fulfilled if the jury thought their version of the events was reasonable and 'ma[de] sense.'" Asserting that the prosecutor's comments on burden of proof constitute misconduct, defendant argues he received ineffective assistance when his counsel failed to object on this ground.

#### 1. Additional Background.

Prior to opening and closing statements, the jury was instructed on the prosecution's burden of proving defendant's guilt beyond a reasonable doubt. The jury was further instructed on evaluating witnesses' testimony and credibility and elements of the offenses.

During closing argument, the prosecutor set forth the testimony establishing that defendant inflicted the fatal blows, addressed the differences between the elements of the charged offenses and lesser included offenses, and briefly commented on the testimony that he anticipated the defense would rely upon. The prosecutor identified the burden of proof as being beyond a reasonable doubt, adding: "What that means is explained in the

4

jury instructions.  But I would like to show you the practical application of it; how it applies to this case.  [¶]  In this case, I presented you with a story of guilt.  That story of guilt is what I explained to you when I walked through the facts.  [¶]  *It's logical, it's reasonable, it makes sense, and none of the evidence that's been presented in this case contradicts any of it.*  [¶]  *That to you is proof beyond a reasonable doubt.*  There's no reasonable alternative explanation; there's no theory presented by the Defense of how his client didn't do it."  (Italics added.)

In response, defense counsel pointed out that prior to going into a coma, the victim told police no one assaulted him, and defendant told the police that he did not hit the victim but, rather, pushed Gutierrez.  Defense counsel called into question the witnesses' testimony identifying defendant as the assailant.  He questioned whether it was defendant who hit or pushed the victim.  He basically argued the "'[h]e didn't do it'" defense.  Alternatively, he argued accident:  "It's very unfortunate that [the victim] died. . . .  But did anyone really kill him?  And does that make any sense, given everything we know about his case, without speculation?  [¶]  No rage.  Just a horrific accident. . . ."

Later, in rebuttal, the prosecutor noted that, with the exception of the last few minutes of closing argument, defense counsel argued that defendant did not do it.  The prosecutor observed the jury had "one story of guilt presented by all the witnesses and the evidence," and then there was the defense that argued for ignoring the "bad evidence" and "only pay attention to the part of the defendant's interview where he denies things."

5

The prosecutor stated: "What you just heard were a series of explanations for singular facts. What I mean by that is every single bad fact that shows that the defendant is guilty, [defense counsel] was able to come up with a reason why you shouldn't believe it. [¶] But what you have to ask yourself, is it reasonable—this is the standard he used. *Is it reasonable to believe that every one of those facts that makes the defendant look guilty has an alternative explanation and that you believe that all of those alternative explanations all happened in this case?* [¶] *Or, is this simple, logical, obvious story the correct one?* The one that's backed up by the actual evidence without having to disregard it? The one that's backed up by the witnesses without having to believe that they were wrong or making things up?" (Italics added.)

Defendant raised no objection to the prosecutor's statements until now, where he takes issue with the italicized portions noted above.

### 2. Analysis.

"'A defendant whose counsel did not object at trial to alleged prosecutorial misconduct can argue on appeal that counsel's inaction violated the defendant's constitutional right to the effective assistance of counsel.' [Citation.] Defendant advances that claim here. He bears the burden of showing by a preponderance of the evidence that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's

deficiencies resulted in prejudice. [Citations.]" (*People v. Centeno* (2014) 60 Cal.4th 659, 674 (*Centeno*).)

In this case, the problems with the prosecutor's statements regarding the burden of proof are less than clear. Initially, the prosecutor argued that the jury consider the reasonably possible interpretation to be drawn from the evidence: "It's logical, it's reasonable, it makes sense, and none of the evidence that's been presented in this case contradicts any of it." However, he added, "That to you is proof beyond a reasonable doubt." Following defense counsel's closing argument, the prosecutor stated: "Is it reasonable to believe that every one of those facts that makes the defendant look guilty has an alternative explanation and that you believe that all of those alternative explanations all happened in this case? [¶] Or, is this simple, logical, obvious story the correct one?" According to defendant, such comments misstate the burden of proof.

"The case law is replete with innovative but ill-fated attempts to explain the reasonable doubt standard. [Citations.]" (*Centeno*, *supra*, 60 Cal.4th at p. 667.) Our Supreme Court has recognized the "difficulty and peril inherent in such a task," and has cautioned against such attempts by prosecutors and courts. (*People v. Medina* (1995) 11 Cal.4th 694, 745.) "When attacking the prosecutor's remarks to the jury, the defendant must show that, '[i]n the context of the whole argument and the instructions' [citation], there was 'a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.] In conducting this inquiry,

7

we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements. [Citation.]' [Citations.]" (*Centeno*, *supra*, at p. 667.)

Relying on *Centeno* and *People v. Ellison* (2011) 196 Cal.App.4th 1342 [4th Dist., Div. Two] (*Ellison*), defendant asserts the prosecutor's comments on the applicable burden of proof constitute prejudicial misconduct. In *Centeno*, the defendant was charged with molesting a young child. The prosecutor used a visual display of the state of California, along with hypothetical testimony describing various cities to describe the concept of reasonable doubt. (*Centeno*, *supra*, 60 Cal.4th at pp. 664, 669-671.) Furthermore, the prosecutor "implied that the People's burden was met if its theory was 'reasonable' in light of the facts supporting it. [¶] The prosecutor told the jury that in reaching its decision it must reject impossible and unreasonable inferences, and only consider reasonable possibilities. She stated that 'your decision has to be in the middle. It has to be based on reason. It has to be a reasonable account. . . . [Y]ou need to look at the entire picture, not one piece of evidence, not one witness . . . to determine if the case has been proven beyond a reasonable doubt.' [¶] She then asked the jury to consider the following: 'Is it reasonable to believe that a shy, scared child who can't even name the body parts made up an embarrassing, humiliating sexual abuse, came and testified to this in a room full of strangers *or the defendant abused Jane Doe. That is what is reasonable, that he abused her*.' [¶] . . . She continued: 'Is it reasonable to believe that there is an

8

innocent explanation for a grown man laying on a seven year old?  No, that is not reasonable.  Is it reasonable to believe that there is an innocent explanation for the defendant taking his penis out of his pants when he's on top of a seven-year-old child?  No, that is not reasonable.  Is it reasonable to believe that the defendant is being set-up in what is really a very unsophisticated conspiracy led by an officer who has never met the defendant *or he*['*s*] *good for it?  That is what is reasonable.  He's good for it*.'  (Italics added.)"  (*Id*. at pp. 671-672.)  Defense counsel made no timely objection.  The prosecutor's argument suggested that it was "reasonable" to believe that defendant was guilty.  Considering the closeness of the case and the absence of any corrective action, the Supreme Court concluded "there is a reasonable probability that the prosecutor's argument caused one or more jurors to convict defendant based on a lesser standard than proof beyond a reasonable doubt."  (*Id*. at p. 677.)

In *Ellison*, the prosecutor made several incorrect references to the reasonable doubt standard.  (*Ellison*, *supra*, 196 Cal.App.4th at p. 1351.)  The prosecutor argued that reasonable doubt "'is whether the doubt that you have is reasonable. . . .  It's—you have to look at whether or not it's reasonable or unreasonable for the defendant to be innocent.'"  The prosecutor continued:  "'[T]he jury instructions tell you that if there's two reasonable interpretations of the evidence, one points to guilt, one points to innocence.  You have to vote not guilty because that's fair, because that means it's reasonable that the defendant is innocent. . . .'"  (*Ibid*.)  On appeal, we concluded that

9

"the prosecutor improperly attempted to lessen the People's burden of proof by arguing to the jury that the beyond-a-reasonable-doubt standard required the jury to determine whether defendant's innocence was reasonable." (*Id.* at p. 1353.) However, we found that the error did not require reversal, because (1) the jury was properly instructed on the principles of law relating to the presumption of innocence and the burden of proof; (2) the prosecutor twice reminded the jury that "'[t]he law comes from the Judge'"; (3) defense counsel objected and the trial court provided a curative instruction; (4) the jury acquitted defendant of the three most serious charges, demonstrating its understanding and application of the applicable burden of proof; and (5) defendant admitted the elements of the crime. (*Ibid.*)

Unlike the facts in *Centeno*, in this case the prosecutor did not use any diagram to describe the concept of reasonable doubt. (*Centeno*, *supra*, 60 Cal.4th at p. 664.) Unlike the facts in *Ellison*, the prosecutor did not ask the jury to determine whether the defendant's innocence was reasonable. (*Ellison*, *supra*, 196 Cal.App.4th at p. 1353.) However, it appears the prosecutor may have confused the concept of unreasonable inferences with the burden of proof to establish guilt beyond a reasonable doubt by suggesting "the jury could *find defendant guilty* based on a 'reasonable' account of the evidence." (*Centeno*, *supra*, at p. 673, original italics.) Specifically, the prosecutor stated: "In this case, I presented you with a story of guilt. That story of guilt is what I explained to you when I walked through the facts. [¶] It's logical, it's reasonable, it

makes sense, and none of the evidence that's been presented in this case contradicts any of it. [¶] That to you is proof beyond a reasonable doubt."

Assuming that the prosecutor misstated the reasonable doubt standard in closing argument, defense counsel was deficient in failing to object. The question thus becomes whether counsel's deficiency resulted in prejudice, that is, a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland v. Washington* (1984) 466 U.S. 668, 694.) We conclude the deficiency was harmless.

Here, the facts established that the victim was fatally attacked. The only question for the jury to decide was whether defendant was the perpetrator. The trial court properly instructed the jurors on reasonable doubt (CALCRIM Nos. 103 and 220), the People's burden of proof (CALCRIM No. 220), that counsel's comments are not evidence (CALCRIM Nos. 104 and 222), that they alone judge the credibility of the witnesses (CALCRIM Nos. 105 and 226) and that they must follow the court's instructions (CALCRIM No. 200, 220, 222).[2] We generally presume the jurors understood and followed the court's instructions. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1234.) The prosecutor's improper statement was brief and followed a discussion of the evidence and the charges against defendant. At the time the prosecutor made the statement he also

---

[2] The jury was also instructed prior to trial on reasonable doubt, the People's burden of proof, that counsel's comments are not evidence, and that they are to follow the court's instructions "precisely."

11

stated: "Burden of proof in this case is proof beyond a reasonable doubt. What that means is explained in the jury instructions."

Moreover, the evidence against defendant was overwhelming. The jury did not have to rely solely on the credibility of one witness as in *Centeno*. Rather, two witnesses saw defendant punch the victim. The victim fell down and one witness saw defendant kick the victim in the head two to three times. A third witness identified defendant as being present during the fight, but was unsure if he was the attacker. Defendant was found in the area of the attack wearing clothing the witnesses attributed to the attacker. And, during his interview, defendant acknowledged knocking the victim to the ground.

After reviewing the entire record, we conclude defendant was not prejudiced by the improper argument.

**B. Instructions on Voluntary Intoxication and Accident.**

Defendant faults the trial court for failing to instruct the jury on voluntary intoxication and accident. We conclude the trial court properly instructed the jury without giving these instructions.

*1. Standard of Review.*

The trial court must instruct the jury on the general principles of law "'closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case.' [Citation.]" (*People v. Sedeno* (1974) 10 Cal.3d 703, 715,

overruled on other grounds in *People v. Blakeley* (2000) 23 Cal.4th 82, 89 and *People v. Breverman* (1998) 19 Cal.4th 142, 163, fn. 10.)

### 2. *Voluntary Intoxication.*

In his interview, defendant stated that he went looking for Gutierrez because he had learned that Gutierrez had punched one of defendant's friends. Defendant said that he was going after Gutierrez when the victim came at him (defendant) and then defendant "slammed" the victim, who "just went over." Defendant claimed that he just wanted "to get [the victim] out of the way." Defendant denied hitting the victim, claiming that the victim was drunk and just fell over while defendant was trying to fight Gutierrez.

When the detective asked defendant if he had been drinking on the day he assaulted the victim, defendant said that he drank every day, buying alcohol with the money he made on side jobs. He claimed that he could not remember the events of the day the victim was attacked because he was "too damn intoxicated." He stated that he had consumed 80 ounces of beer and a fifth of whiskey. Nonetheless, defendant accused the victim of pulling a knife on him (defendant) and that he wrestled it away. Defendant stated that he tossed the knife away and could not help the detective find it because he "was too damn intoxicated." The parties stipulated that the victim did not have a knife on the day he was attacked.

Defendant was charged with simple assault and second degree murder. Prior to trial, the prosecutor moved to limit the defense from arguing voluntary intoxication as a

13

defense on the grounds that it did not apply to implied malice second degree murder or simple assault, both of which are general intent crimes. In response, defendant's counsel stated the jury would hear that "pretty much everyone involved was drunk. But it's not my defense, at least as it relates to my client's intoxication." Given the prosecution's theory that none of the offenses or enhancements required specific intent, the court noted that the jury could not consider voluntary intoxication on the issue of intent. Defense counsel agreed: "Right. Correct. And you won't see that jury instruction request coming from us."

During both opening and closing statements, the defense theory of the case was that defendant did not hit or kick the victim, but sought out Gutierrez, who had previously ambushed defendant's friend. According to the defense, the victim was intoxicated and slipped or tripped, hitting his head on the concrete; Gutierrez hit the victim in the head with his boot to get him to get up. During the discussion of the jury instructions, defense counsel never mentioned voluntary intoxication as part of the defense or an alternative theory for involuntary manslaughter.

The trial court instructed the jury on both second degree murder and involuntary manslaughter. The court made sure that the jury understood that even though the instructions mentioned voluntary manslaughter, the only two options for them were second degree murder and involuntary manslaughter.

14

Following trial, defendant filed a section 1181 motion for new trial, asking the court to either vacate his conviction for second degree murder and replace it with the lesser offense of involuntary manslaughter, or grant his request for a new trial. According to defendant, his arrest for public intoxication on the day of the victim's beating showed that he was intoxicated during the commission of the crime, thereby lacking the mental state required for murder. He argued that in spite of the fact the jury knew he was arrested for public intoxication, they "unanimously decided [he] had the mental capacity to form the specific intent or a subjective awareness that his conduct would endanger the life of another and then acted in conscious disregard of that risk." The trial court denied defendant's motion for new trial.

"[E]vidence of voluntary intoxication [is] relevant on the issue of whether the defendant actually formed any required specific intent." (*People v. Pensinger* (1991) 52 Cal.3d 1210, 1242-1243; see also § 29.4[3]) Thus, in a homicide case, it may be relevant to the issues of premeditation and deliberation and intent to kill. (§ 29.4, subd. (b).) "The

---

[3] Section 29.4 states: "(a) No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his or her having been in that condition. Evidence of voluntary intoxication shall not be admitted to negate the capacity to form any mental states for the crimes charged, including, but not limited to, purpose, intent, knowledge, premeditation, deliberation, or malice aforethought, with which the accused committed the act. [¶] (b) Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent, or, when charged with murder, whether the defendant premeditated, deliberated, or harbored express malice aforethought. [¶] (c) Voluntary intoxication includes the voluntary ingestion, injection, or taking by any other means of any intoxicating liquor, drug, or other substance."

15

trial court," however, "has no duty to instruct sua sponte on voluntary intoxication. [Citation.]" (*People v. Clark* (1993) 5 Cal.4th 950, 1022, disapproved on an unrelated point in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.) Rather, "'[a]n instruction on the significance of voluntary intoxication is a "pinpoint" instruction that the trial court is not required to give unless requested by the defendant.' [Citation.]" (*People v. Verdugo* (2010) 50 Cal.4th 263, 295.) "'[A] defendant is entitled to such an instruction only when there is substantial evidence of the defendant's voluntary intoxication and the intoxication affected the defendant's "actual formation of specific intent."' [Citation.]" (*Ibid.*) Substantial evidence of intoxication alone is not enough; there must also be evidence that the intoxication impaired the defendant's ability to formulate intent. (*People v. Williams* (1997) 16 Cal.4th 635, 677-678.)

Here, an instruction on voluntary intoxication was not supported by substantial evidence. The only evidence of defendant's intoxication is his claim that he drank every day, liked beer and whiskey, and "had two 40s plus about a fifth of whiskey" on the day of the victim's beating. However, there was absolutely no evidence that this had any effect on defendant's ability to form any specific intent. No witness, including defendant, testified that he appeared or acted intoxicated. No witness testified as to the period of time defendant allegedly drank the alcohol or whether it was before or after the attack on the victim, and there was no evidence of defendant's blood alcohol percentage at the time of the attack. In contrast, when defendant was interviewed by the detective, defendant

16

recounted how Gutierrez had beaten up defendant's friend which provoked defendant to retaliate. Defendant claimed the victim merely got in the way, and defendant "snapped" or "dropped" the victim in order to get to Gutierrez. Additionally, defendant's arrest for public intoxication (§ 647, subd. (f)) falls short of evidence of voluntary intoxication resulting in unconsciousness. Thus, the evidence is insufficient to support an instruction on voluntary intoxication resulting in unconsciousness. (*People v. Halvorsen* (2007) 42 Cal.4th 379, 418 (*Halvorsen*) [no duty to instruct sua sponte on unconsciousness due to voluntary intoxication where "[d]efendant's own testimony makes clear that he did not lack awareness of his actions during the course of the offenses"]; *People v. Turk* (2008) 164 Cal.App.4th 1361, 1374-1375 [no duty to instruct on involuntary intoxication resulting in unconsciousness where testimony suggesting defendant was significantly intoxicated at the time of the killing fails to support an inference that he was so intoxicated to be unconscious].)

Moreover, diminished capacity due to voluntary intoxication was inconsistent with both the prosecution and the defense theories of the case. (*People v. Hood* (1969) 1 Cal.3d 444, 457-458 [jury may not consider voluntary intoxication where the crime charged requires only general intent]; *People v. Simpson* (1987) 192 Cal.App.3d 1360, 1369 ["Where the defense theory is nonparticipation, the question of whether voluntary intoxication prevented formation of specific intent is irrelevant."]; *People v. Watts* (1976) 59 Cal.App.3d 80, 84-85.)

17

*3. Accident.*

As previously noted, in his interview defendant stated that he "went after" Gutierrez when the victim came at him (defendant), and then defendant "slammed" the victim, who "just went over." Defendant claimed that he just wanted "to get [the victim] out of the way." He denied hitting the victim, claiming that the victim was drunk and just fell over while defendant was trying to fight Gutierrez. According to the defense, this was "[j]ust a horrific accident."

When discussing jury instructions, the prosecutor observed that the murder could have been committed as "a misdemeanor assault done with negligence" based upon defendant's acknowledgment he pushed the victim. The prosecutor postulated: "There was another theory that was floating around that it was an accidental push." The court replied, "I think [the prosecutor] and also the Court is waiting for the Defense to tell us how they wish for the jury to be instructed. I think [the prosecutor's] belief is that, factually, this is not an involuntary manslaughter at all." Defense counsel simply responded, "True." Nonetheless, defense counsel argued on giving CALCRIM No. 3404, which explains that a defendant is not guilty of a charged crime if he acted without the intent required for that crime, but acted instead accidentally. The trial court saw no need for the instruction, finding it "somewhat redundant . . . because it covers matters that I think are covered by other instructions." Defense counsel agreed with the court but thought "accident is one of those big red flags that I think the jury should at least have an

18

instruction to go to. [¶] They'll find some of the language in some other instructions." However, defense counsel opined that if the jury thought "maybe [defendant] just kind of bumped [the victim], maybe it was an accident. Do you have accident? Oh, yeah, what does it say?" The trial court declined to instruct the jury on accident but did not preclude defense counsel from making "the argument [he had] just made," because the court believed "it is consistent with the lack of required mental state in support of a conviction for the other counts."

Accident is a statutory defense. Section 26 provides: "All persons are capable of committing crimes except those belonging to the following classes: [¶] . . . [¶] Five— Persons who committed the act or made the omission charged through misfortune or by accident, when it appears that there was no evil design, intention, or culpable negligence." Generally, the defense of accident amounts to a claim that the defendant acted without forming the mental state necessary to make his or her actions a crime. (*People v. Anderson* (2011) 51 Cal.4th 989, 996-998.) As CALCRIM No. 3404 explains, a defendant "is not guilty of" a charged crime if he or she acted "without the intent required for that crime, but acted instead accidentally." "[T]he burden is on the defendant to establish the absence of evil design, intention and culpable negligence." (*People v. Thurmond* (1985) 175 Cal.App.3d 865, 871.)

Here, defendant failed to present evidence that he lacked intent to act, or that his actions were negligent. According to the defense, defendant pushed the victim out of the

19

path to Gutierrez, causing the victim to fall and hit his head. Defense counsel speculated that the jury might think defendant's bumping into the victim was an accident. However, there was no evidence that defendant bumped into the victim. Rather, the evidence showed that defendant approached Gutierrez with the intent to assault him, and pushed or slapped the victim. Although the trial court allowed defense counsel to argue an accident theory, the defendant admitted to an "evil design" or "criminal intent." (§ 26) Thus, his pushing or slapping of the victim, even if unintentional, was not the sort of accident to which CALCRIM No. 3404 is directed. In other words, the victim's injuries were not the result of a misadventure that occurred in the course of innocent, lawful conduct. (*People v. Gorgol* (1953) 122 Cal.App.2d 281, 308.)

We find no error in the trial court not instructing on the accident defense. But if we were to assume that this was error, we would find it harmless, even under the more rigorous test of *Chapman v. California* (1967) 386 U.S. 18, 24. (*People v. Salas* (2006) 37 Cal.4th 967, 984.) The accident defense is a claim that the mental state required to commit the offense is absent. (*People v. Bohana* (2000) 84 Cal.App.4th 360, 370.) The jury was instructed on the elements of murder and manslaughter, and even absent an accident instruction, defendant was free to argue (and did argue) that the assault was accidental and that the jury should therefore acquit him. Instead, the jury convicted him of second degree murder, which necessarily included a finding of malice based on an intent to commit an act whose natural consequences are dangerous to human life. (See

*People v. Cortez* (1998) 18 Cal.4th 1223, 1229.) Furthermore, the jury found that defendant personally inflicted great bodily injury upon the victim during the commission of the crime. Given the verdict, the jury would not have accepted an accident theory even if given an instruction. Any error was therefore harmless beyond a reasonable doubt. (*Chapman v. California*, *supra*, at p. 24.)

## C. Cumulative Error.

Defendant lastly asserts the alleged errors cumulatively compromised his due process rights and were prejudicial. "'We have either rejected on the merits defendant's claims of error or have found any assumed errors to be nonprejudicial. We reach the same conclusion with respect to the cumulative effect of any assumed errors.'" (*People v. Cole* (2004) 33 Cal.4th 1158, 1235-1236.)

## III. DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

                                                HOLLENHORST

                                                      Acting P. J.

We concur:

MCKINSTER
                             J.

KING
                             J.