[No. D059254. Fourth Dist., Div. One. Oct. 11, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
KENYATTA QUINN MITCHELL, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of Discussion parts III. and IV.

COUNSEL

Jared G. Coleman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood and Marvin E. Mizell, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**HALLER, J.**—Kenyatta Quinn Mitchell was found guilty of violating Penal Code former section 12020, subdivision (a)(4), which prohibits the carrying

of a concealed dirk or dagger.[1] On appeal, he asserts his conviction should be reversed because (1) the statute prohibiting concealed carrying of a dirk or dagger violates the constitutional right to bear arms for self-defense and (2) the trial court erred in failing to instruct the jury on intent to conceal. We reject these contentions.

As to sentencing, Mitchell asserts the court's findings on prior prison term and strike allegations must be set aside because he was not properly advised of his rights prior to admitting these allegations. Additionally, Mitchell argues the trial court abused its discretion by imposing a $1,000 restitution fine. In the unpublished portion of this opinion, we find no reversible error in this regard.

## FACTUAL AND PROCEDURAL BACKGROUND

About 9:00 a.m. on September 28, 2010, trolley security officer Francisco Valenzuela removed Mitchell from the trolley because Mitchell did not have a ticket to ride the trolley. Mitchell sat down on a bench at the trolley station while Valenzuela contacted a code compliance officer to issue a citation. Another security officer (Alex Colon) stood behind Mitchell to provide cover. When Mitchell leaned forward on the bench, Colon noticed the silver tip of what appeared to be a knife sticking out of the bottom of Mitchell's sweatshirt. The knife was not visible before Mitchell leaned forward.

Colon signaled to Valenzuela to alert him about the knife, and in response Valenzuela asked Mitchell to stand up and put his hands behind his back. Mitchell complied, and Valenzuela handcuffed him. Valenzuela advised Mitchell that he would be conducting a patdown search for weapons, and asked if Mitchell had anything that would "poke" him. Mitchell denied that he had anything of this nature. During the patdown, Valenzuela felt or saw the tip of the knife, and when he raised Mitchell's sweatshirt he observed the remainder of the knife. The knife was in between Mitchell's belt and trousers. Its total length was about 11 inches, and it had a five-inch-long fixed blade. Mitchell told the security officers that he carried the knife for self-defense. The police were summoned and Mitchell was arrested.

At trial, Mitchell elected to represent himself and testified on his own behalf. On direct examination, Mitchell stated that he was going fishing that

---

[1] Subsequent unspecified statutory references are to the Penal Code.

Effective in 2012, several Penal Code sections relevant to this case have been renumbered with no substantive change. Former section 12020, subdivision (a)(4) is now section 21310; former section 12020, subdivision (c)(24) is now section 16470; former section 12020, subdivision (d) is now section 20200; and former section 653k is now sections 21510 and 17235. For convenience, we eliminate the term "former" in text when referring to these statutes.

day and he uses the knife as a fishing tool. He claimed he was not intentionally trying to hide the knife, and he forgot that he had it. He also testified that he tried to be compliant with the security officer because he did not want to inflame the situation and he "was trying to go about [his] business and hopefully get to work on time that day."

On cross-examination, Mitchell testified that before he left for the trolley that morning he placed the knife between his belt and pants, and he was going to the harbor to fish with a friend who had fishing equipment. Although he was now claiming that he had the knife for fishing purposes, he acknowledged that he did not have a fishing pole with him when he was stopped and he told the security officer that he had the knife for self-defense.

*Jury Verdict and Sentence*

The jury convicted Mitchell of carrying a concealed dirk or dagger. (Former § 12020, subd. (a)(4).) After the jury's verdict, Mitchell admitted a prior prison term allegation and a prior strike allegation. The court sentenced him to five years in prison, consisting of four years for the concealed-carrying offense (double the two-year middle term pursuant to his strike prior) and one year for the prison prior.

## DISCUSSION

### I. *Constitutionality of Statute Prohibiting Carrying of Concealed Dirk or Dagger*

For the first time on appeal, Mitchell asserts that the statute prohibiting the carrying of a concealed dirk or dagger is unconstitutional, both facially and as applied to him. He contends that the statute violates the right to bear arms in self-defense under the Second Amendment of the federal Constitution, as interpreted by the United States Supreme Court in *District of Columbia v. Heller* (2008) 554 U.S. 570 [171 L.Ed.2d 637, 128 S.Ct. 2783] (*Heller*). Although a defendant's failure to present an issue to the trial court generally forfeits it on appeal, we exercise our discretion to consider the issue to the extent it presents a pure question of law or involves undisputed facts. (See *In re Sheena K.* (2007) 40 Cal.4th 875, 880–881, 887–888, fn. 7 [55 Cal.Rptr.3d 716, 153 P.3d 282]; *Charisma R. v. Kristina S.* (2009) 175 Cal.App.4th 361, 384 [96 Cal.Rptr.3d 26], disapproved on other grounds in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 532, fn. 7 [113 Cal.Rptr.3d 327, 235 P.3d 988].)

To review Mitchell's constitutional challenge, we summarize the statute and the *Heller* decision, and then evaluate the constitutionality of the statute on its face and as applied to Mitchell.

## A. *The Statute*

Section 12020 stated: "(a) Any person in this state who does any of the following is punishable by imprisonment in a county jail not exceeding one year or in the state prison: [¶] . . . [¶] (4) Carries concealed upon his or her person any dirk or dagger." The statute defines a dirk or dagger as: "a knife or other instrument with or without a handguard that is capable of ready use as a stabbing weapon that may inflict great bodily injury or death. A nonlocking folding knife, a folding knife that is not prohibited by Section 653k [(i.e., a switchblade)], or a pocketknife is capable of ready use as a stabbing weapon that may inflict great bodily injury or death only if the blade of the knife is exposed and locked into position."[2] (Former § 12020, subd. (c)(24).) Further, the statute provides: "Knives carried in sheaths which are worn openly suspended from the waist of the wearer are not concealed within the meaning of this section." (Former § 12020, subd. (d).)

■ Thus, the statute generally proscribes the concealed carrying of a knife, but provides exceptions for (1) a knife placed in a sheath and visibly suspended from the waist and (2) a nonswitchblade folding or pocketknife if the blade is not exposed and locked. (See *In re Luke W.* (2001) 88 Cal.App.4th 650, 653 [105 Cal.Rptr.2d 905]; *In re George W.* (1998) 68 Cal.App.4th 1208, 1213–1215 [80 Cal.Rptr.2d 868].) The Legislature's purpose in enacting the statute was to combat the dangers arising from the *concealment* of weapons. (See *In re Luke W., supra*, 88 Cal.4th at p. 653.) "The policy underlying the prohibition against concealed weapons is based on the protection of those persons who may come into contact with a weapon bearer. If a weapon is not concealed, one may take notice of the weapon and its owner and govern oneself accordingly, but no such opportunity for cautious behavior or self-preservation exists for one encountering the bearer of a concealed weapon. In light of this policy, the question whether a particular weapon was concealed should be considered from the point of view of one approaching the location of the weapon, and the intent of the defendant as to concealment should not be considered, since a defendant's innocent intent does not make a concealed weapon any more visible." (94 C.J.S. (2001) Weapons, § 21, p. 594.)

■ In short, the prohibition against carrying a concealed dirk or dagger is designed to give third parties the opportunity to protect themselves from the risk of a surprise attack by a person carrying a weapon. (See *In re Luke W., supra*, 88 Cal.App.4th at p. 653.) The openly displayed sheathed knife exception does not detract from the statutory purpose because the bearer's

---

[2] Section 653k proscribed the carrying of a switchblade knife, meaning a knife with a blade length of two or more inches that can be released automatically, with some exceptions when certain features are present, including a mechanism that provides resistance that must be overcome when opening the blade.

possession of the knife is visible. Similarly, the folding or pocketknife exception is consistent with the statute's objective because folded knives are not capable of ready use "without a number of intervening machinations that give the intended victim time to anticipate and/or prevent an attack." (*Ibid.*)

The statute does not require that the defendant intend to use the concealed dirk or dagger as a stabbing instrument. (*People v. Rubalcava* (2000) 23 Cal.4th 322, 331 [96 Cal.Rptr.2d 735, 1 P.3d 52] (*Rubalcava*).) However, "the absence of a specific intent requirement does *not* make the carrying of a concealed dirk or dagger a strict liability offense." (*Ibid.*) Although a "defendant's intended use of the instrument [is not] an element of the offense, . . . to commit the offense, a defendant must still have the requisite *guilty mind*: that is, the defendant must knowingly and intentionally carry concealed upon his or her person an instrument 'that is capable of ready use as a stabbing weapon.' . . . A defendant who does not know that he is carrying the weapon or that the concealed instrument may be used as a stabbing weapon is therefore not guilty . . . ." (*Id.* at pp. 331–332, citation omitted.)

■ In addition to incorporating a knowledge element, the California Supreme Court has generally recognized that when a defendant is charged with an offense that penalizes possession of an instrument that is ordinarily usable for peaceful purposes, the defendant may justify the possession by showing the possession was "in accordance with [the instrument's] ordinary legitimate design." (*People v. Grubb* (1965) 63 Cal.2d 614, 621, fn. 9 [47 Cal.Rptr. 772, 408 P.2d 100]; see *Rubalcava, supra,* 23 Cal.4th at p. 329 ["the surrounding circumstances of possession—including defendant's intended use—were relevant to the issue of whether the [object] was a prohibited weapon"].) Consistent with this principle, the standard CALCRIM instruction for the offense of carrying a concealed dirk or dagger directs that when the instrument may have innocent uses, the jury should be given an instruction stating: "When deciding whether the defendant knew the object . . . could be used as a stabbing weapon, consider all the surrounding circumstances, including the time and place of possession. Consider also the destination of the defendant, the alteration of the object from standard form, and other facts, if any." (CALCRIM No. 2501, parentheses & bracketed punctuation omitted; see CALJIC 12.41 [the "mental state with which a knife or other instrument is carried may be inferred from the evidence, including the attendant circumstances, the time, place, destination of the possessor . . . and any other relevant facts established by the evidence"].)

## B. *The* Heller *Decision*

■ In *Heller*, the United States Supreme Court held that the Second Amendment to the federal Constitution codifies the long-existing right of an

individual to possess and carry weapons for self-defense in case of confrontation. (*Heller, supra*, 554 U.S. at pp. 592–595; see *McDonald v. Chicago* (2010) 561 U.S. ___ [177 L.Ed.2d 894, 130 S.Ct. 3020] [2d Amend. applies to the states].) Based on this constitutional right, the *Heller* court struck down statutes that totally banned handgun possession in the home and required that lawful firearms in the home be rendered inoperable by disassembly or binding with a trigger lock. (*Heller, supra*, at pp. 628–629, 635.) The court reasoned that the handgun ban prohibited an entire class of arms that was overwhelmingly chosen by society for self-defense, and at a location (the home) where the need for self-defense is most acute. (*Ibid.*) Further, the requirement that firearms in the home be kept inoperable made it impossible to use them in immediate fashion "for the core lawful purpose of self-defense." (*Id.* at pp. 630, 635.)

However, the *Heller* court recognized that the right to bear arms in self-defense, like most constitutional rights, is not unlimited. (*Heller, supra*, 554 U.S. at pp. 595, 626.) "[T]he right [is] not a right to keep and carry any weapon whatsoever *in any manner whatsoever* and for whatever purpose." (*Id.* at p. 626, italics added.) Of particular relevance here, the *Heller* court commented that the majority of 19th-century courts held that "prohibitions on carrying *concealed* weapons were lawful under the Second Amendment . . . ." (*Ibid.*, italics added.)

## C. *Analysis*

### 1. *Facial Constitutionality*

Consistent with the historical interpretation permitting prohibitions on the carrying of concealed weapons, we find no facial unconstitutionality in the statute proscribing the carrying of a concealed dirk or dagger.

When evaluating a facial challenge to the constitutional validity of a statute, we consider the text of the statute itself, not its application to the particular circumstances of the individual. (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084 [40 Cal.Rptr.2d 402, 892 P.2d 1145].) If a statute is constitutional in its general and ordinary application, the statute is not facially unconstitutional merely because "there might be some instances in which application of the law might improperly impinge upon constitutional rights." (*American Academy of Pediatrics v. Lungren* (1997) 16 Cal.4th 307, 347 [66 Cal.Rptr.2d 210, 940 P.2d 797]; see *Guardianship of Ann S.* (2009) 45 Cal.4th 1110, 1126 [90 Cal.Rptr.3d 701, 202 P.3d 1089].)[3] Any overbreadth in a

---

[3] There has been some debate about the proper standard to apply when evaluating a facial challenge to a statute's constitutionality, i.e., a stricter standard that requires a showing of

generally constitutional statute can be cured by a case-by-case analysis of the particular fact situation. (See *Guardianship of Ann S., supra*, 45 Cal.4th at p. 1132; *People v. Yarbrough* (2008) 169 Cal.App.4th 303, 311 [86 Cal.Rptr.3d 674].)

When evaluating the constitutionality of a statute, the courts have developed several levels of scrutiny (i.e., strict, intermediate, and rational basis), depending on the nature of the right affected by the statute and the manner in which the right is impacted. (See *Heller, supra*, 554 U.S. at p. 628.) We reject Mitchell's contention that the constitutionality of the concealed-carrying statute should be evaluated under the strict scrutiny test, and conclude the proper test is intermediate scrutiny.[4] "Strict scrutiny does not apply automatically any time an enumerated [constitutional] right is involved." (*U.S. v. Marzzarella* (3d Cir. 2010) 614 F.3d 85, 96 (*Marzzarella*).) In *Marzzarella*, the court concluded that intermediate scrutiny should be applied because the statute under review regulated the manner of possession of a weapon, but did not completely ban the possession of the weapon. (*Id.* at p. 97; accord, *People v. Ellison* (2011) 196 Cal.App.4th 1342, 1347 [128 Cal.Rptr.3d 245].) The dirk or dagger concealed-carrying restriction does not entirely prohibit the carrying of a sharp instrument for self-defense; rather, it limits the manner of exercising that right by proscribing concealed carrying of a dirk or dagger unless the bearer uses a visible knife sheath or nonswitchblade folding or pocketknife. Because the statute regulates but does not completely ban the carrying of a sharp instrument, we subject it to intermediate scrutiny. .

Under the intermediate scrutiny test, the statute must serve an important governmental interest and there should be a reasonable fit between the regulation and the governmental objective. (*Marzzarella, supra*, 614 F.3d at pp. 97–98.) The regulation need not be the least restrictive means of serving the governmental interest, but it should be narrowly tailored to serve the interest, should not burden the protected right more than is reasonably necessary to further the governmental interest, and should leave open ample alternative means of exercising the protected right. (*Ibid.*)

---

unconstitutionality in all cases, versus a more lenient standard that only requires a showing of unconstitutionality in the great majority of cases. (*Guardianship of Ann S., supra*, 45 Cal.4th at p. 1126.) In any event, under either standard, the challenger cannot prevail merely by pointing to some instances of potential unconstitutional application. At a minimum, a successful facial challenge requires a showing that the statute is unconstitutional as to "a substantial portion of those persons to whom the statute applies." (*American Academy of Pediatrics v. Lungren, supra*, 16 Cal.4th at p. 348; see *Kolender v. Lawson* (1983) 461 U.S. 352, 358, fn. 8 [75 L.Ed.2d 903, 103 S.Ct. 1855] [statute that unconstitutionally impacts a substantial amount of protected conduct may be facially invalidated even when it could have some constitutional application].)

[4] *Heller* rejected application of the rational-basis test to Second Amendment infringement issues, but left open whether strict or intermediate scrutiny should be applied. (*Heller, supra*, 554 U.S. at pp. 628 & fn. 27, 634.)

Several California appellate courts, including our own court, have concluded that statutes restricting the carrying of concealed firearms pass constitutional muster after *Heller*. (*People v. Yarbrough, supra,* 169 Cal.App.4th at p. 314; *People v. Flores* (2008) 169 Cal.App.4th 568, 575 [86 Cal.Rptr.3d 804]; *People v. Ellison, supra,* 196 Cal.App.4th at p. 1348.) In *Yarbrough,* the court reasoned: "Unlike possession of a gun for protection within a residence, carrying a concealed firearm prevents a recognized 'threat to public order . . . ' . . . . A person who carries a concealed firearm on his person . . . 'which permits him immediate access to the firearm but impedes others from detecting its presence, poses an "imminent threat to public safety . . ." . . .' . . . . [¶] Rather than cast any doubt upon the continued constitutional validity of concealed weapons bans, the *Heller* opinion specifically expressed constitutional approval of the accepted statutory proscriptions against carrying concealed weapons." (*Yarbrough, supra,* 169 Cal.App.4th at p. 314, citations omitted.)

We reach the same conclusion here. The ban on carrying a concealed dirk or dagger serves the important governmental interest of allowing third parties to protect themselves from exposure to the risk of a surprise attack from a bearer of a weapon. The risk of a surprise attack exists even if the weapon bearer originally intends to use the weapon only for legitimate self-defense. The public safety risk arising from possession of a weapon (including a knife) even for "anticipatory self-defense" was explained in *Mack v. United States* (D.C. 2010) 6 A.3d 1224: "When dangerous weapons are readily available, death or serious injury too often result. One who carries a knife, a pistol, or an ice pick may think that he will use it only in lawful self-defense. But threats, violence, and other unsettling events may occur without warning. People who are startled or upset may overreact, lose their tempers, or make poor judgments under stress. Even when they start out with good intentions, persons who carry items capable of inflicting death or great bodily injury may use them in ways and in situations that are not justified—with grave results." (*Id.* at p. 1232.)

■ Further, an instrument qualifies as a dirk or dagger only if it is a knife or other instrument capable of ready use as a stabbing weapon that may inflict great bodily injury or death; hence, the statute is narrowly restricted to concealed stabbing instruments that pose a serious threat to physical safety. Further, the statute does not apply to the open carrying of a dirk or dagger, and it excludes from its coverage an openly suspended sheathed knife, as well as nonswitchblade folding and pocketknives kept in a closed or unlocked position. Thus, the statute provides other means of carrying a dirk or dagger for self-defense. We conclude the statute does not run afoul of the Second Amendment because it is narrowly tailored to serve the important governmental interest of preventing exposure to the risk of surprise attacks and does

not burden the right to bear arms in self-defense beyond what is reasonably necessary to serve that interest.

Mitchell asserts that the statement in *Heller* referencing 19th-century court approval of prohibitions on concealed weapons should not be controlling under today's societal circumstances. He posits that in modern society a person who openly carries a dirk or dagger for self-defense would be subject to police interference and the only reasonable avenue of bearing a knife in self-defense is to carry it in concealed fashion. Accordingly, he asserts that the statute leaves no reasonable means of carrying a knife for self-defense. This contention ignores the fact that the statute permits a visible sheathed knife which would not necessarily draw the attention of the authorities and a concealed folding or pocketknife which would be unobservable. Thus, regardless of the modern-day reality that may make the open carrying of a knife unrealistic in most circumstances, the statute still provides a reasonable means of carrying a knife for self-defense.

Mitchell also argues that the statute fits squarely within the type of regulation struck down in *Heller* because (like the handgun ban) it bans the most preferred method of carrying knives for self-defense, and (like the disassembly/trigger lock requirement) it prevents quick use of a knife for self-defense. Even if we construe the effect of the statute in this fashion, the contention is unavailing because it fails to recognize the markedly different contexts involved in the statutes at issue in *Heller* and the statute before us. *Heller* concerned statutes explicitly restricting *a person's ability to immediately defend against intruders in the home*. In contrast, the dirk/dagger statute restricts the concealment of weapons on a person *to protect the rights of third parties not to be exposed to surprise attacks*. The statute does not contain any express restriction on concealment of weapons on the person at home, and to the extent it is capable of being applied improperly in the home context (see discussion below), any overbreadth can be cured on a case-by-case basis. Further, the strong governmental interest in protecting third parties from exposure to the risk of surprise attacks (which was not implicated in *Heller*) justifies reasonable restrictions on the concealment of stabbing instruments, even if these restrictions require some manipulation that prevents instantaneous use of a knife in self-defense. Mitchell's assertion that the statutes at issue in *Heller* are analogous to the statute before us is unpersuasive. (See *Mack v. United States, supra*, 6 A.3d at p. 1236 [*Heller*'s holding does not invalidate conviction based on concealed carrying of ice pick for self-defense].)

In support of his facial challenge, Mitchell posits scenarios in which the statute could be applied to a person carrying a concealed sharp instrument under circumstances that clearly posed no threat to public safety; i.e., a

shopper who purchases a knife and carries it in a shopping bag, or a mother who packs a knife in a picnic basket to cut an apple at a picnic.[5] In *Rubalcava, supra,* 23 Cal.4th at page 333, the California Supreme Court acknowledged that the statute "may seem overbroad as a matter of common sense" if it was applied to such innocuous circumstances as a tailor who places a pair of scissors in his jacket, a shopper who walks out of a store with a recently purchased steak knife in his pocket, or a parent who wraps a sharp knife in a paper towel and places it in his coat to take to a PTA potluck dinner. (*Id.* at pp. 331, 333.) However, the court concluded that it would not find the statute "*unconstitutionally* overbroad without some concrete impairment of constitutionally protected conduct." (*Id.* at p. 333.) Mitchell has not explained how applying the statute to a person who carries a concealed sharp instrument for an obviously harmless purpose is impeded in his or her ability to exercise the right to bear arms for self-defense. Because in these circumstances the person is *not* carrying the instrument for self-defense, there is no infringement on that constitutional right.

■ In a similar vein, Mitchell cites circumstances where a person might conceal a knife to legitimately use in self-defense but which do not involve the governmental interest in protecting third parties from exposure to the risk of surprise attacks; e.g., a person at home who places a knife in his or her pocket to confront a trespasser in a driveway, or a hunter who carries a knife in his or her backpack for self-defense purposes (see fn. 5, *ante*). However, a defendant cannot prevail on a facial challenge to a statute that is constitutional in its general and ordinary application " ' "by suggesting that in some future hypothetical situation constitutional problems may possibly arise as to the particular application of the statute . . . ." ' " (*Tobe v. City of Santa Ana, supra,* 9 Cal.4th at p. 1084, italics omitted; see *American Academy of Pediatrics v. Lungren, supra,* 16 Cal.4th at p. 347.) Mitchell has not shown that the general and ordinary application of the statute extends to such innocuous circumstances.

■ Moreover, as set forth above, the California Supreme Court has recognized that in cases involving an instrument that may have innocent uses, the defendant may defend against the charges based on circumstances showing innocuous possession. (*People v. Grubb, supra,* 63 Cal.2d at p. 621, fn. 9.) This concept is incorporated in the standard CALCRIM instruction for the concealed dirk or dagger offense which—when the instrument may have

---

[5] These examples presume that the offense of carrying a concealed dirk or dagger is necessarily committed even when the instrument is in some type of carrying container rather than carried directly on the person's body. The proscription against carrying a concealed weapon " 'upon his person' " has been applied to a *firearm* carried in a suitcase. (*People v. Dunn* (1976) 61 Cal.App.3d Supp. 12, 13–14 [132 Cal.Rptr. 921].) We will assume, without deciding, that the same interpretation applies to a dirk or dagger.

innocent purposes—directs the jury to consider all the surrounding circumstances (including time, place, and destination) when deciding whether the defendant knew the instrument could be used as a stabbing weapon. (CALCRIM No. 2501.) The description of the offense reflected in the standard jury instructions serves to ameliorate concerns that the statute will be applied in overbroad fashion to innocuous carrying of a concealed knife. If the statute nevertheless is applied to a particular defendant in a manner that defies common sense and infringes on the constitutional right to bear arms in self-defense, the defendant may raise an as-applied challenge to the statute.

Mitchell additionally argues that the statute is facially unconstitutional because it severely punishes even accidental concealment of a knife that could occur if "clothing inadvertently covered some portion of the weapon." To the contrary, as we shall discuss in more detail when addressing Mitchell's claim of instructional error on intent, culpability for accidental concealment is precluded under the principles of general intent which require that the defendant intentionally commit the prohibited act. (See *People v. Padilla* (2002) 98 Cal.App.4th 127, 135 [119 Cal.Rptr.2d 457].)

### 2. *As-applied Constitutionality*

We also reject Mitchell's claim that the statute is unconstitutional as applied to him. When considering a claim that a facially valid statute has been applied in a constitutionally impermissible manner, "the court evaluates the propriety of the application on a case-by-case basis to determine whether to relieve the defendant of the sanction." (*Tobe v. City of Santa Ana, supra,* 9 Cal.4th at p. 1084.) An as-applied challenge "contemplates analysis of the facts of a particular case . . . to determine the circumstances in which the statute . . . has been applied and to consider whether in those particular circumstances the application deprived the [defendant] of a protected right." (*Ibid.*) When reviewing an as-applied constitutional challenge on appeal, we defer to the trial court's findings on historical facts that are supported by substantial evidence, and then independently review the constitutionality of the statute under those facts. (See *Board of Administration v. Wilson* (1997) 52 Cal.App.4th 1109, 1127–1130 [61 Cal.Rptr.2d 207].)

Mitchell argues that he "posed no threat to anybody [who] did not attack him," and reiterates essentially the same assertions he made in his facial challenge. Regardless of Mitchell's claimed intent to use the weapon only defensively, as we have explained, the statute survives constitutional scrutiny because it is reasonably necessary to serve the important governmental interest of diminishing the risk of a surprise attack that accompanies concealed carrying of a dirk or dagger.

To support his claim of as-applied unconstitutionality, Mitchell contends that if he had carried the knife openly in a sheath rather than hidden under his sweatshirt, this would increase the danger to the public because the knife could be more easily grabbed by a third party. This contention fails to recognize that the *concealment* prohibition is designed to provide third parties the opportunity to avoid *surprise attacks*. Thus, by prohibiting concealment the statute advances the governmental purpose irrespective of the ease with which an unconcealed weapon can be accessed.

Mitchell also asserts that he "was an indigent man who was struggling for subsistence" and who could not financially afford a permissible self-defense weapon. This issue concerns factual matters that were not presented to the trial court for resolution; thus, Mitchell may not prevail on this claim for the first time on appeal unless the matter can be resolved as a matter of law. (See *Charisma R. v. Kristina S., supra*, 175 Cal.App.4th at pp. 384–385.) He has cited no evidence showing as a matter of law that the permitted alternative means of carrying a knife (a sheathed knife or folding or pocketknife) are so cost prohibitive as to unconstitutionally affect his right to bear arms for self-defense.

Mitchell does not assert that the statute was unconstitutionally applied to him based on his testimony that he had the knife with him for fishing. It is apparent from the record that the jury rejected this claim. The jury was given the standard CALCRIM instruction relating to innocent use, which stated that the jury should consider all the surrounding circumstances when deciding whether the defendant knew the object could be used as a stabbing weapon.[6] Consistent with this instruction, in closing arguments the prosecutor did not suggest to the jury that Mitchell would be guilty even if he was merely carrying the knife for fishing; instead the prosecutor asserted that the fishing explanation "appeared to be something he just thought of this day" and noted there was "[n]o fishing pole, nothing like that." Thus, this is not a case involving a conviction based on an innocuous possession of a knife.

Mitchell's constitutional challenge to the statute fails.

## II. *No Duty to Instruct on Specific Intent to Conceal*

Based on the language of CALCRIM No. 2501, the jury was instructed that to prove the offense of carrying a concealed dirk or dagger, the prosecution must prove that Mitchell carried on his person a dirk or dagger; he knew that he was carrying it and that it could readily be used as a stabbing

---

[6] The trial court concluded this instruction should be given since Mitchell claimed he had the knife for the innocent use of fishing.

weapon; and the dirk or dagger was substantially concealed on his person. Mitchell asserts the trial court erred by failing to sua sponte instruct the jury that intent to conceal is also an element of the concealed dirk or dagger offense. Although section 12020 did not contain any language stating that intent to conceal was an element of the offense, Mitchell argues that the knowledge element defined by the California Supreme Court in *Rubalcava, supra*, 23 Cal.4th 322 includes the intent to conceal. He asserts that instruction on intent to conceal was crucial in his case because he testified he was not intentionally trying to hide the knife. He also posits that "[i]nadvertent concealment of a substantial part of a carried knife is always a risk during routine use."

Intent to conceal can be defined as the defendant's specific, subjective intent to prevent someone from seeing the knife, or as the defendant's general intent to purposefully commit the act of placing the knife in a concealed location. As we shall explain, to the extent Mitchell is asserting that specific intent to conceal the knife from onlookers is an element of the offense, his contention is unavailing. To the extent he is asserting that intentional, rather than inadvertent, commission of the act of concealment is an element of the offense, we agree but find there was no instructional error as to this requirement.

In *Rubalcava* the court held the concealed dirk or dagger offense was a general intent crime, and the statute did not require that the defendant intend to use the concealed instrument as a stabbing instrument. (*Rubalcava, supra*, 23 Cal.4th at pp. 330–332.) However, *Rubalcava* construed the offense as requiring a knowledge element, stating the defendant must "knowingly and intentionally carry concealed upon his or her person an instrument 'that is capable of ready use as a stabbing weapon.'" (*Id.* at pp. 331–332.) The *Rubalcava* court cited two instances, supported by examples, when the requisite knowledge element would be absent: (1) a defendant who does not know that he is carrying the weapon (for example, if someone slipped a knife into a defendant's pocket without the defendant's knowledge) or (2) a defendant who does not know that the concealed instrument may be used as a stabbing weapon (for example, if someone gave a defendant a fixed-blade knife wrapped in a paper towel, but told the defendant the knife had a folding blade that could not lock). (*Id.* at p. 332 & fn. 6.)

There is nothing in *Rubalcava* that suggests the knowledge element incorporates a specific intent to conceal the weapon from other persons. However, a requirement that the defendant intentionally commit the act of concealment is encompassed within the principle of general intent. As the jury was instructed, general intent means that the "person must not only commit the prohibited act, but must do so with wrongful intent. A person acts

with wrongful intent when he or she *intentionally* does a prohibited act . . . ." (Italics added; see CALCRIM No. 250.) Here, the prohibited act is the concealed carrying of a dirk or dagger; thus, the defendant must intentionally commit the act of concealment. As a corollary to this principle, a defendant may present an accident defense based on a claim that he or she acted accidentally rather than with the intent required for the crime. (§ 26; *People v. Anderson* (2011) 51 Cal.4th 989, 996 [125 Cal.Rptr.3d 408, 252 P.3d 968]; see, e.g., *People v. Jeffers* (1996) 41 Cal.App.4th 917, 922 [49 Cal.Rptr.2d 86] ["a felon who acquires possession of a firearm through misfortune or accident, but who has no intent to exercise control or to have custody, commits the prohibited act without the required wrongful intent"].) The trial court is generally not required to instruct sua sponte on accident given that the mental state instructions adequately convey to the jury the required mental elements. (*People v. Anderson, supra,* 51 Cal.4th at pp. 992, 998; see *People v. Padilla, supra,* 98 Cal.App.4th at pp. 134–136 [instruction that defendant must act intentionally apprised jury of defense based on accidental carrying of concealed firearm in car].)

Allowing a defendant to avoid culpability based on an accidental/unintentional concealment does not mean the prosecution has the burden to prove an additional element of specific intent to conceal that is distinct from the concept of general intent. There is nothing in the statute or *Rubalcava* that supports inclusion of a specific intent to conceal element based on the defendant's subjective intent to hide the object from onlookers.[7]

██ The offense is established if the prosecution proves that the defendant intentionally and knowingly committed the proscribed act of carrying a concealed dirk or dagger, and no further proof concerning intent is required. Because the offense does not include a requirement of specific intent to conceal the instrument from other persons, the trial court had no duty to instruct on this element. (See *Rubalcava, supra,* 23 Cal.4th at pp. 333–334.) Further, the trial court properly instructed the jury on general intent, which encompassed the requirement of an intentional, not accidental, act of concealing the weapon.

---

[7] A concurring justice in *Rubalcava* noted that adding the element of intent to conceal (apparently referring to intent to hide the instrument from onlookers) would narrow the statute by removing innocuous acts of concealment (such as a parent carrying a concealed knife to a PTA potluck) from its scope. (*Rubalcava, supra,* 23 Cal.4th at p. 338, fn. 1 (conc. opn. of Werdegar, J.).) However, the concurring justice recognized that "[r]eading an intent-to-conceal element into the statute may not be consistent with its overall purposes, as carrying a concealed dagger is dangerous to public safety whether or not the bearer purposely concealed the weapon." (*Ibid.* (conc. opn. of Werdegar, J.).)

III., IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Huffman, Acting P. J., and Irion, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 23, 2013, S206830.

---

*See footnote, *ante*, page 1364.