Filed 2/26/21  P. v. Pineda CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>MARIO DANIEL PINEDA,<br><br>　　　Defendant and Appellant. | B302298<br><br>(Los Angeles County<br>Super. Ct. No. GA105574) |

　　　　APPEAL from a judgment of the Superior Court of Los Angeles County, Michael Villalobos, Judge.  Affirmed.

　　　　Adrian K. Panton, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　　Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Paul M. Roadarmel, Jr., and John Yang, Deputy Attorneys General for Plaintiff and Respondent.

_____

A jury convicted defendant Mario Daniel Pineda of carrying a concealed dirk or dagger (Pen. Code,[1] § 21310), misdemeanor possession of a controlled substance (Health & Saf. Code, § 11377), and misdemeanor possession of a device for injecting a controlled substance (*id.*, § 11364). He admitted an allegation that he had a prior strike conviction. (§§ 667, subds. (b)–(j), 1170.12.) The court sentenced defendant to four years in prison.

Defendant contends that the court erred in excluding evidence of his use of the alleged dirk or dagger as a tool of his employment and in denying his request for a certain jury instruction. We affirm.

### FACTUAL AND PROCEDURAL SUMMARY

On April 15, 2019, at approximately 1:00 a.m., defendant was asleep in the driver's seat of a car parked illegally in a parking lot adjacent to a public park. No one else was in or near the vehicle. Los Angeles County Sheriff's Deputy Brittany Wallace approached the car. Deputy Wallace saw a syringe on the center console within arm's reach of defendant. The syringe contained a substance that Deputy Wallace believed to be—and was later determined to be—a usable amount of methamphetamine. Deputy Wallace woke defendant and asked him to get out of the car. He complied.

Defendant was wearing workout shorts, a T-shirt, and a sweatshirt. Deputy Wallace searched defendant for weapons and found an unsheathed 11-inch knife with a six-inch double-edged blade underneath defendant's sweatshirt and

---

[1] Subsequent unspecified statutory references are to the Penal Code.

2

between the elastic waistband of the shorts and defendant's stomach. Deputy Wallace placed defendant in handcuffs and retrieved the knife. Defendant told Deputy Wallace, "I don't know what that is. I don't know how that got there."

Deputy Wallace placed defendant in the back seat of her patrol car and retrieved the syringe and its contents from defendant's car. During an inventory of defendant's car, Deputy Wallace found on the front passenger side of the car a sheath that appeared to fit the knife found on defendant. She also found a tool bag and school supplies in the trunk of the car.

Additional facts pertaining to the issues on appeal are set forth below.

## DISCUSSION

Defendant contends the court prejudicially erred by: (1) excluding testimony from his mother and brother that he carried his knife in a sheath and used the knife in connection with his work; and (2) refusing to instruct the jury with certain optional, bracketed language in CALCRIM No. 2501. We reject these arguments.

### A. *Section 21310*

Section 21310, generally, makes it a crime for any person to carry "concealed upon the person any dirk or dagger." A " 'dirk' or 'dagger' means a knife or other instrument with or without a handguard that is capable of ready use as a stabbing weapon that may inflict great bodily injury or death." (§ 16470.)

The offense is a general intent crime that does not require proof of the defendant's "intent to use the concealed instrument as a stabbing instrument." (*People v. Rubalcava* (2000) 23 Cal.4th 322, 331 (*Rubalcava*).) Thus, evidence of such intent is

ordinarily "irrelevant and should not be considered by the trier of fact when deciding whether a given knife qualifies as a dirk or dagger." (*People v. Gonzales* (1995) 32 Cal.App.4th 229, 234; see also *People v. Barrios* (1992) 7 Cal.App.4th 501, 506 [trial court erred in allowing jury to consider evidence of the defendant's intent in possessing a knife].)

The offense is not a strict liability crime, however, and our Supreme Court has explained that the "defendant must still have the requisite *guilty mind*:  that is, the defendant must knowingly and intentionally carry concealed upon his or her person an instrument 'that is capable of ready use as a stabbing weapon.' " (*Rubalcava, supra,* 23 Cal.4th at pp. 331–332.) The defendant must therefore know that the instrument " 'is capable of ready use as a stabbing weapon' " (*id.* at p. 331) and "intentionally commit the act of concealment" (*People v. Mitchell* (2012) 209 Cal.App.4th 1364, 1381 (*Mitchell*)).

The requirement that the defendant know the instrument is capable of ready use as a stabbing weapon is the subject of the following optional, bracketed instruction under CALCRIM No. 2501:  "When deciding whether the defendant knew the object . . . could be used as a stabbing weapon[ ], consider all the surrounding circumstances, including the time and place of possession.  Consider also (the destination of the defendant[,] the alteration of the object from standard form[,]) and other facts, if any."  According to the accompanying bench notes, this instruction should be given "only if the object was not designed solely for use as a stabbing weapon but may have innocent uses." (Bench Notes to CALCRIM No. 2501 (2020) p. 360.)  We will refer to this below as the knowledge instruction.

4

In the absence of a specific intent requirement, section 21310 has been criticized as "stupendously broad" (*People v. Hester* (2020) 58 Cal.App.5th 630, 640 (*Hester*) (conc. opn. of Wiley, J.)), petn. for rev. pending, petn. filed Jan. 25, 2021, S266806) because it potentially criminalizes "the 'innocent' carrying of legal instruments such as steak knives, scissors and metal knitting needles' " (*Rubalcava*, *supra*, 23 Cal.4th at p. 330), as well as pencils, pens, letter openers, and "a miniature replica of the Eiffel Tower" (*Hester*, *supra*, 58 Cal.App.5th at pp. 639–640 (conc. opn. of Wiley, J.)). As Justice Wiley has pointed out, even a "morally innocent grocery clerk" who handles a box cutter knows the tool could be used as a stabbing weapon (*id*. at p. 645 (conc. opn. of Wiley, J.)); and when that clerk puts the tool inside his pocket, he has apparently committed a crime.

To avoid convicting "morally blameless" possessors of concealed instruments that could be used as a stabbing weapon (*Hester*, *supra*, 58 Cal.App.5th at p. 638, petn. for rev. pending, petn. filed Jan. 25, 2021, S266806), some courts have recognized a defense: "[W]hen a defendant is charged with an offense that penalizes possession of an instrument that is ordinarily usable for peaceful purposes, the defendant may justify the possession by showing the possession was 'in accordance with [the instrument's] ordinary legitimate design' " (*Mitchell*, *supra*, 209 Cal.App.4th at p. 1372, quoting *People v. Grubb* (1965) 63 Cal.2d 614, 622, fn. 9 (*Grubb*); accord, *People v. Bermudez* (2020) 45 Cal.App.5th 358, 370; *Hester*, *supra,* 58 Cal.App.5th at p. 637; see also *id*. at p. 645 (conc. opn. of Wiley, J.) ["[t]his defense is what insulates morally innocent people from the statute's expansive scope"]). Although the

5

contours of this defense for the morally blameless remain to be settled, the Supreme Court's decision in *Rubalcava* precludes a defense based upon the defendant's intended use of the instrument (*Rubalcava, supra*, 23 Cal.4th at p. 334 ["defendant's intended use of the instrument is neither an element of the offense nor a defense"].)

## B.    *Additional Facts*

At the outset of the trial, defense counsel indicated that he intended to introduce testimony by defendant's brother and mother.  The witnesses would testify that defendant regularly carried his knife in a sheath, and defendant's brother would testify that he worked with defendant at a construction site where they installed rubber mats for playgrounds and defendant used the knife to cut the flooring for the playground. The prosecutor requested that the evidence be excluded as irrelevant or inadmissible under Evidence Code section 352.

Defense counsel stated that the defense's "position is that the knife was not on [defendant's] person; that the knife was on the seat next to him inside the sheath."  Counsel conceded, however, that evidence that defendant did not have the knife on his person at the time he was detained was "not going to come in because the brother wouldn't know."  The court stated that such evidence "would only come in if [defendant] testified," to which defense counsel added, "[o]r if the officer agreed with me[,] which is unlikely."

Defense counsel argued that he intended to offer the testimony of defendant's brother to show that defendant "regularly possessed that knife for the purposes of work." He referred the court to the optional, bracketed knowledge instruction in CALCRIM No. 2501, set out above, which permits

6

the jury to consider the "surrounding circumstances" and "other facts" "when deciding whether the defendant knew the object . . . could be used as a stabbing weapon."

The court rejected this ground, stating that "what the People need to prove is simply that [the knife] was in his possession, and that it was concealed. The intended use of the knife is not an issue. And even if it is true that he used it at work, the fact that the knife was concealed is controlling." Furthermore, "just looking at the knife, it fits the description of a weapon that could be used for . . . stabbing purposes. The fact that [defendant] uses it at work[,] even if that's true, is not really relevant because it doesn't matter."

Defense counsel further argued that the defendant's mother and brother would testify that defendant always kept his knife in a sheath. The court rejected this argument, explaining that carrying the knife in a sheath "does not necessarily mean that it's always carried not concealed," and that the defense's proffer did not indicate that the witnesses would testify that defendant, "as a habit, always carries it outside" of his clothing.

After the close of evidence, the court and counsel discussed jury instructions. The court indicated it would give CALCRIM No. 2501 in part as follows: "[T]he People must prove that one, the defendant carried on his person a dirk or dagger. Two, the defendant knew that he was carrying it. Three, it was substantially concealed on the defendant's person. And four, the defendant knew that it could readily be used as a stabbing weapon. The People do not have to prove that the defendant used or intended to use the alleged dirk or dagger as a weapon."

7

Defense counsel requested that the court further instruct the jury with the knowledge instruction: " 'When deciding whether the defendant knew the object . . . could be used as a stabbing weapon[,] consider all of the surrounding circumstances[,] including the time and place of possession. Consider also the destination of the defendant, alteration of the object from standard form[,] and other facts[,] if any.' " Counsel argued that the instruction was proper because the knife has "innocent uses."

The prosecution argued that the knife is, on its face, a dangerous weapon and there was no evidence of an innocent purpose.

Defense counsel responded by pointing out that he attempted to introduce evidence of an innocent purpose through the testimony of defendant's brother that defendant used the knife in his work. Counsel then requested that he be permitted to reopen the case to permit such testimony.

The court denied defense counsel's requests. The court explained that "it is clear that the defendant knew the object could be used as a stabbing weapon just by simply looking at it." There was thus "no issue" that the weapon could be used as a stabbing weapon. Furthermore, the court added, regardless of defendant's purpose for possessing it at the time of his arrest, his concealment of it "is still a violation of the law."

### C. *The Exclusion of Testimony of Defendant's Mother and Brother to Impeach Deputy Wallace*

Defendant contends that the court should have allowed the defendant's mother and brother to testify as to defendant's practice of carrying his knife in a sheath for the purpose of

8

impeaching the credibility of Deputy Wallace's testimony that the knife was concealed and unsheathed.

We review a trial court's evidentiary rulings generally, and rulings that evidence is irrelevant in particular, for an abuse of discretion. (*People v. Mickel* (2016) 2 Cal.5th 181, 219-220; *People v. Clark* (2016) 63 Cal.4th 522, 597; see *People v. Jones* (2013) 57 Cal.4th 899, 947 ["[t]he trial court has broad discretion to determine the relevance of evidence"].) If the court erred, we will reverse the judgment only if, based on our review of the entire record, it is reasonably probable that a result more favorable to defendant would have been reached in the absence of the error. (*People v. Cunningham* (2001) 25 Cal.4th 926, 999; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

Evidence is relevant if it tends, " ' " 'logically, naturally, and by reasonable inference' to establish material facts." ' " (*People v. Wilson* (2006) 38 Cal.4th 1237, 1245.) Evidence that "leads only to speculative inferences" is irrelevant. (*People v. Morrison* (2004) 34 Cal.4th 698, 711.)

Defendant attempts to demonstrate the relevance of the excluded testimony by explaining that "there was a sheath found in the car and the proffered testimony from [defendant's] brother would be that [defendant] used the knife . . . to cut flooring. This was known to the brother because he worked with [defendant]. From this testimony, the jury could infer that the knife was in the sheath when found by the officer." Because the conclusion from this chain of reasoning—that the knife was in the sheath at the time of the incident—contradicts Deputy Wallace's testimony, defendant asserts that the evidence is relevant to impeach the deputy's testimony.

We reject this argument. The inferences necessary to connect (1) the fact that a sheath was found in the car, (2) defendant used the knife in his work to cut flooring, and (3) the knife was in the sheath at the time of the incident are neither logical, natural, or reasonable.

That defendant kept the knife in its sheath would narrow somewhat the inferential gaps in defendant's reasoning. Even then, however, the connection between (1) defendant's use of the knife in his work and carrying it in its sheath and (2) the knife being in its sheath on the passenger side of the car at the time of his arrest is tenuous and speculative. The court, therefore, did not abuse its discretion in excluding the evidence as irrelevant. (See *People v. Guillen* (2014) 227 Cal.App.4th 934, 1024.)

Defendant also supports his argument by asserting that the jury could reasonably "conclude that [Deputy] Wallace's testimony was unreasonable" because "[i]t strains credulity to think that [defendant] would put an unsheathed knife in his waistband while a sheath for the knife was lying next to him. The act itself is dangerous." The point that placing an unsheathed knife inside one's shorts is dangerous is valid and was argued at some length to the jury for the purpose of raising doubt about Deputy Wallace's version of the incident. But it does little to make the proffered testimony from defendant's mother and brother relevant. Placing an unsheathed knife inside one's shorts is dangerous regardless of whether one normally keeps the knife in a sheath.

Even if the court abused its discretion in refusing to allow the proffered evidence, defendant has failed to establish that the error was prejudicial. Testimony from defendant's

10

mother and brother as to how defendant ordinarily carried his knife, if relevant at all, would have had little probative impact on the issue of whether defendant concealed the knife under his clothing at the time of his arrest. In short, it is not reasonably probable that defendant would have obtained a different result if the court had allowed the excluded evidence.

### D. *The CALCRIM No. 2501 Knowledge Instruction and Denial of Defendant's Request to Reopen*

Defendant contends that the court erred in denying his request to reopen the case to permit his brother to testify regarding defendant's use of the knife in his job as a playground construction worker and failing to give the knowledge instruction in CALCRIM No. 2501.

We first consider the ruling denying the request to reopen the case, which we review for an abuse of discretion. (*People v. Marshall* (1996) 13 Cal.4th 799, 836.)

Defendant argues that the proffered testimony by defendant's brother that defendant used the knife in connection with his playground construction work was relevant to show that the knife had "innocent uses." The testimony was admissible for that purpose, he contends, based on the knowledge instruction in CALCRIM No. 2501. We disagree.

The knowledge instruction allows the jury to consider the "surrounding circumstances" and "other facts" to assist the jury in "deciding whether the defendant knew the object . . . could be used as a stabbing weapon." (CALCRIM No. 2501.) According to a use note for the instruction it is to be given "only if [the] object may have innocent uses" (Use Note to CALCRIM No. 2501 (2020) p. 359), and the bench notes similarly state that it should be given "only if the object was not designed solely for

11

use as a stabbing weapon but may have innocent uses." (Bench Notes to CALCRIM No. 2501 (2020) p. 360.)

But the advice from the drafters of the instruction that it be given *only if* the object may have innocent uses does not mean that it should be given *whenever* there is evidence that the object has an innocent use; evidence of an innocent use for the knife must still have a "tendency in reason to prove or disprove" (Evid. Code, § 210) that defendant knew the knife "could be used as a stabbing weapon" (CALCRIM No. 2501).[2] Here, the proffered testimony—that defendant used the knife to cut rubber mats for playground floors—has no tendency to disprove that defendant knew the knife could be used as a stabbing weapon.

During oral argument before this court, defendant raised the "morally blameless" defense theory discussed in *Hester*.[3] We reject the argument. That defense permits a defendant to "justify the possession" "of an instrument that is ordinarily usable for peaceful purposes" "by showing the possession was 'in accordance with [the instrument's] ordinary legitimate design' " (*Mitchell*, *supra*, 209 Cal.App.4th at p. 1372; accord, *Hester,*

---

[2] Defendant relies on the statement in *Mitchell* that "when the instrument may have innocent uses, the jury should be given" the knowledge instruction. (*Mitchell*, *supra*, 209 Cal.App.4th at p. 1372.) To the extent that *Mitchell* suggests that the knowledge instruction must be given whenever the offending instrument has innocent uses—even when the innocent uses have no relevance to issues in the case—it is dicta because the *Mitchell* court's analysis did not depend upon such an expansive interpretation of the instruction.

[3] *Hester* was decided after defendant filed his opening brief in this case.

*supra*, 58 Cal.App.5th at p. 637, petn. for rev. pending, petn. filed Jan. 25, 2021, S266806).  The defense appears to be intended for persons such as the grocery clerk who innocently places his box cutter in his pocket (see *id*. at p. 645 (conc. opn. of Wiley, J.)), the little leaguer whose bat should not be mistaken for a billy club (see *Grubb, supra*, 63 Cal.2d at p. 621), the "tailor who places a pair of scissors in his jacket" (*People v. Oskins* (1999) 69 Cal.App.4th 126, 138, disapproved in *Rubalcava, supra*, 23 Cal.4th at p. 334, fn. 8), or the parent who takes a knife to a PTA potluck (*People v. Aubrey* (1999) 70 Cal.App.4th 1088, 1102, disapproved in *Rubalcava, supra*, 23 Cal.4th at p. 334, fn. 8).  Here, even if defendant used his 11-inch double-edged knife in his playground construction work, he was not possessing it for that purpose when it was concealed under his waistband while he slept in his illegally parked car at 1:00 in the morning.  Moreover, the defense proffer of the brother's testimony did not include any evidence of the knife's " 'ordinary legitimate design.' "  (See *Mitchell, supra*, 209 Cal.App.4th at p. 1372.)  The defense that may be available to the morally blameless, therefore, was not available to defendant here.

The court, therefore, did not err in declining to reopen the case to permit the defendant's brother's testimony.  Because the applicability of the knowledge instruction was dependent upon the reopening of the case for that purpose, the court's ruling denying the requested instruction, which we review de novo (*People v. Berryman* (1993) 6 Cal.4th 1048, 1089), was correct.

**DISPOSITION**

The judgment is affirmed.

<u>NOT TO BE PUBLISHED</u>.


                                        ROTHSCHILD, P. J.

We concur:



        CHANEY, J.



        FEDERMAN, J.*

---

**\*** Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14