Filed 3/30/16  P. v. Ragland CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | |
| v. | E062592 |
| JONATHAN DEPREE RAGLAND, | (Super.Ct.No. RIF1300069) |
| Defendant and Appellant. | OPINION |

APPEAL from the Superior Court of Riverside County.  Bernard Schwartz, Judge.  Affirmed.

Robert Booher, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury convicted defendant and appellant, Jonathan Ragland, of first degree murder. (Pen. Code, § 187, subd. (a), count 1.) The jury also found true the allegation that in committing count 1 defendant personally and intentionally discharged a firearm causing great bodily injury or death to another person. (§ 12022.53, subd. (d).)[1] The trial court sentenced defendant to a term of 25 years to life in state prison on count 1 and a consecutive term of 25 years to life on the enhancement, for a total sentence of 50 years to life.

On appeal, defendant challenges his conviction on three grounds. First, he contends he received ineffective assistance of counsel because his attorney failed to object when the prosecutor misstated the burden of proof in closing argument. Second, he contends the trial court erred by failing to instruct the jury sua sponte that it must determine whether a witness was an accomplice whose testimony required corroboration. Third, he contends the cumulative effect of those two errors deprived him of due process. Defendant also challenges his sentence on the ground that it constitutes cruel and unusual punishment because he was only 20 years old at the time of the offense.

We affirm the judgment and the sentence.

## I

## FACTUAL BACKGROUND

Prosecutors charged defendant with shooting and killing Lamar Adams on December 14, 2012. At trial, two civilian witnesses testified against defendant.

---

[1] Unlabeled statutory citations refer to the Penal Code.

2

The first witness, Teesha Butler, testified she went to a birthday party at a friend's apartment with Adams and several other people. She had just met Adams, but had known defendant for five or six years—since ninth or 10th grade—and described him as a friend. According to Butler, at the party an altercation broke out inside the apartment between Adams and another person named Keishawn. After a few minutes, the altercation moved outside and more people started arguing with Adams. She testified she went outside, "everyone that was in the living room went outside," and "some people came out from the [back] room too."

Butler testified defendant approached Adams with a gun and fired three shots from about six feet away. Butler followed defendant as he walked away and reported that Monte Walker advised defendant to make sure Adams was dead. She reported that defendant then approached Adams again and shot him two more times.[2] Butler pushed defendant and asked him what he was doing, and defendant responded by pointing the gun at her. Butler left the scene of the crime without talking to the police, but spoke with the police later.

Adonis Harris, the second witness, also knew defendant from high school and attended the birthday party on December 14, 2012. Harris left the party to buy beer. When he returned to the apartment he saw a group of people arguing. He said he saw "somebody walk in the party and say, you know, 'Perris Locc,' this, that, 'fuck

---

[2] In a pretrial interview, Butler told police that the defendant initially shot Adams one time before returning and shooting him again.

neighborhood,'" and "heard another guy that was arguing, saying, 'I'm from the neighborhood. Where are you from?'" Harris testified that he did not know the first speaker and could not identify the second speaker. Harris said he went into a back room of the apartment as the argument escalated and the people involved moved outside. After about 10 minutes in the back room, Harris heard shots fired and ran outside, where he found people scattering. Harris called a girlfriend and asked her to pick him up. Before she arrived, defendant asked Harris for a ride and Harris agreed to give him one. Harris testified he had not seen defendant at the party at any point before defendant asked for a ride.

Harris and defendant left the scene together, but the police stopped and searched their vehicle. Harris said he told the police they were coming from a party, but did not mention the shooting. A police officer testified Harris told law enforcement they were coming from Harris's grandmother's home and heading for Los Angeles. After the police released them, Harris's girlfriend dropped Harris and defendant at a friend's house, where another girlfriend arrived to pick Harris up. Harris left defendant at the friend's house. Harris later signed an agreement with the prosecutor which gave him immunity for his testimony.

A gang enforcement officer with the police department testified Harris, defendant, Monte Walker, and other people who attended the party were members of the same gang. He testified that Adams was a member of a rival gang. He offered his opinion as a gang expert that the words exchanged at the beginning of the altercation indicate it was a gang-related conflict.

4

The jury convicted defendant of first degree murder for killing Adams. The jury also found true the allegation that defendant personally and intentionally discharged a firearm causing great bodily harm or death. The trial court sentenced defendant to a term of 50 years to life in prison.

## II

## DISCUSSION

A. *Ineffective Assistance of Counsel*

Defendant contends his trial counsel provided ineffective assistance by failing to object when the prosecutor argued the jury could find the People met their burden of proof by presenting a reasonable theory of guilt or by determining that defendant's theory of innocence was not reasonable. We disagree with defendant's characterization of the prosecutor's argument.

1. *The prosecution's statement of the reasonable doubt standard*

At the end of closing argument, the prosecutor described the reasonable doubt standard of proof in the following terms: "Finally, ladies and gentlemen, I'm going to end talking a little bit about reasonable doubt, more specifically what reasonable doubt is not. The definition of 'reasonable doubt' is that you have an abiding conviction that the charge is true. [¶] So what does that not mean? Not beyond all possible doubt. This is an extremely important point. The jury instructions tell you something to the effect of 'Everything in life is open to some kind of possible doubt.' Right? You can have a doubt and still convict. That is just fine. As long as the doubt is not reasonable given the evidence. [¶] Not 100 percent. This is also really important. This is something that we

5

talked about in jury selection.  Once you're back there deliberating, if one of your fellow jurors says, 'Well, you know, I think he's guilty.  The evidence shows he's guilty, but I'm not a hundred percent,' you are obligated to tell that person, 'That's not what the law is.  You're not following the law.  You're holding [the prosecution] to a higher standard than what the law requires.'  You don't have to be a hundred percent.  Nothing in life is a hundred percent.  [¶] . . . [¶] . . . Beyond a reasonable doubt means the exact same thing in every case, be it shoplifting, DUI, all the way up to murder.  Don't hold me to a higher standard just because of the charge.  [¶]  Ultimately is innocence reasonable?  Is there any explanation of all this evidence that makes any sense at all that leads to the defendant being not guilty?  No.  Not a bit."

In rebuttal, the prosecutor argued:  "As the judge explained to you this morning, I get another chance to argue to you because I have the burden of proof.  And so that means that I have to prove the case.  Right?  The defense doesn't have to do anything.  Defense doesn't have to call any witnesses.  Defense doesn't have to cross-examine.  Defense doesn't even have to argue.  But [defense counsel] did [so].  So I get to comment on that. . . .  [Defense counsel] did not provide to you an alternate interpretation of the facts.  He suggested that Teesha isn't credible.  He suggested that the evidence means certain things.  But he didn't actually tell you what the conclusion is.  He didn't give you an explanation that accounts for all of this evidence.  Right?"  The prosecution closed by noting:  "Ultimately, ladies and gentlemen, the defense in their argument did not point the finger at any other person.  They didn't say it was Monte.  They didn't say it was Keishann [*sic*].  They didn't say it was D-Loc.  They did not provide to you any kind of

6

alternate explanation. [¶] The reason for that is because the evidence is pretty overwhelming. It was the defendant who did this. He pulled out a gun, he shot Lamar, he killed him. That's it. That's the only reasonable explanation for this evidence."

Defense counsel did not object at trial to the prosecution's presentation of the reasonable doubt standard.

### 2. *Analysis*

A prosecutor "commit[s] misconduct insofar as her statements could reasonably be interpreted as suggesting to the jury [the prosecutor] did not have the burden of proving every element of the crimes charged beyond a reasonable doubt." (*People v. Hill* (1998) 17 Cal.4th 800, 831, overruled on another ground in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13.) A prosecutor should not "claim[] there must be some affirmative evidence demonstrating a reasonable doubt . . . for the jury may simply not be persuaded by the prosecution's evidence." (*People v. Hill*, *supra*, at p. 831.) "When attacking the prosecutor's remarks to the jury, the defendant must show that, '[i]n the context of the whole argument and the instructions' [citation], there was 'a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.] In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements. [Citation.]' [Citations.]" (*People v. Centeno* (2014) 60 Cal.4th 659, 667 (*Centeno*).)

Because defense counsel did not object at trial, to prevail on appeal, defendant must establish the failure to object constituted ineffective assistance of counsel. (*People*

7

*v. Pope* (1979) 23 Cal.3d 412, 425, overruling on other grounds recognized in *People v. Berryman* (1993) 6 Cal.4th 1048, 1081, fn. 10, overruled on other grounds in *People v. Hill*, *supra*, 17 Cal.4th at p. 823, fn. 1.)  Defendant must show "'(1) that counsel's representation fell below an objective standard of reasonableness; *and* (2) that there is a reasonable probability that, but for counsel's unprofessional errors, a determination more favorable to defendant would have resulted.  [Citations.]  If the defendant makes an insufficient showing on either one of these components, the ineffective assistance claim fails.'"  (*People v. Holt* (1997) 15 Cal.4th 619, 703.)

Here, defense counsel did not perform in an objectively unreasonable fashion because the prosecution's discussion of the reasonable doubt standard was not misleading.  Defense counsel therefore had no reason to object.  The trial court directed the jury that the prosecution had the burden to prove all elements of the charges beyond a reasonable doubt, and explained "[p]roof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true.  The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt."  The prosecution correctly described the same standard to the jury, stating the reasonable doubt standard is met when "you have an abiding conviction that the charge is true."  The prosecution acknowledged it had the burden, telling the jury, "[a]s the judge explained to you this morning, I get another chance to argue to you because I have the burden of proof.  And so that means that I have to prove the case.  Right?  The defense doesn't have to do anything.  Defense doesn't have to call any witnesses.  Defense doesn't have to cross-examine.  Defense doesn't even have to argue."

8

The prosecution also correctly told the jury the reasonable doubt standard of proof did not require the People to overcome all possible doubt or doubt that is unreasonable. (§ 1096 ["Reasonable doubt . . . is not a mere possible doubt"]; *People v. Romero* (2008) 44 Cal.4th 386, 416 [approving prosecutor's argument that jury must "'decide what is reasonable to believe versus unreasonable to believe' and to 'accept the reasonable and reject the unreasonable'"].) The prosecution explained that proving guilt beyond a reasonable doubt does not mean proving guilt "beyond all possible doubt" and that "[t]he jury instructions tell you something to the effect of 'Everything in life is open to some kind of possible doubt.' Right? You can have a doubt and still convict. That is just fine. As long as the doubt is not reasonable given the evidence. [¶] Not 100 percent." Again, this is a correct statement of the burden of proof.

Defendant contends the prosecution crossed the line and suggested a reasonable account of the evidence would satisfy the prosecutor's burden of proof by asking, "Ultimately is innocence reasonable? Is there any explanation of all this evidence that makes any sense at all that leads to the defendant being not guilty?" According to defendant, this statement of the law is equivalent to the improper argument by the prosecutor in *Centeno*, who asked the jury, "Is it reasonable to believe that a shy, scared child who can't even name the body parts made up an embarrassing, humiliating sexual abuse, came and testified to this in a room full of strangers or the defendant abused Jane Doe. That is what is reasonable, that he abused her." (*Centeno*, *supra*, 60 Cal.4th at p. 666.) We disagree the arguments are equivalent. The prosecutor in *Centeno* asked the jury to convict because it was *more reasonable* to conclude from the evidence that

9

defendant was guilty, which erroneously suggests "a 'reasonable' account of the evidence *satisfies the prosecutor's burden of proof*." (*Id.* at p. 662.) By contrast, the prosecutor in this case correctly accepted the burden of proof, but explained the jury should *not* vote to acquit based on defense counsel's explanations of the evidence unless those explanations were reasonable. That is, the prosecutor correctly told the jury it should not acquit based on unreasonable doubt. (See *ibid*.)

Defendant also contends that by pointing out the defense "didn't give you an explanation that accounts for all of [the] evidence," the prosecutor in effect "argued that the jury could not acquit unless appellant presented a reasonable version of the events that convinced the jury that he was innocent." We disagree. The prosecution acknowledged it had the burden of proof, and specifically explained the "defense doesn't have to do anything. Defense doesn't have to call any witnesses. Defense doesn't have to cross-examine. Defense doesn't even have to argue." The prosecution also explained that, because defense counsel did argue the evidence, "I get to comment on that. . . . [Defense counsel] did not provide to you an alternate interpretation of the facts. He suggested that Teesha isn't credible. He suggested that the evidence means certain things. But he didn't actually tell you what the conclusion is. He didn't give you an explanation that accounts for all of this evidence. Right?" These comments cannot reasonably be interpreted to mean the defendant could not prevail without presenting a reasonable explanation of the evidence. On the contrary, they acknowledge the defense could prevail if the jury discounted some or all of the testimony against defendant. The comments by the prosecution simply point out that, if the jury credited the evidence, the

10

defense did not put forward a reasonable explanation to undermine the prosecution's case for guilt.  (See *Centeno*, *supra*, 60 Cal.4th at p. 673 ["[T]he prosecution can surely point out that interpretations proffered by the defense are neither reasonable nor credible.  Nevertheless, even if the jury rejects the defense evidence as unreasonable or unbelievable, that conclusion does not relieve or mitigate the prosecutorial burden"].)  We conclude there is no reasonable likelihood the prosecutor's comments misled the jury about the standard of proof.  As a result, defense counsel's performance was not deficient.[3]

Defendant contends *People v. Ellison* (2011) 196 Cal.App.4th 1342 and *People v. Lloyd* (2015) 236 Cal.App.4th 49 require a different result.  We disagree.  In *Ellison*, this court determined the prosecutor crossed the line by arguing that "the jury instructions tell you that if there's two reasonable interpretations of the evidence, one points to guilt, one points to innocence.  You have to vote not guilty because that's fair, because that means it's reasonable that the defendant is innocent," and that "[b]eyond a reasonable doubt is what the evidence that you're given [*sic*].  Is it reasonable that the defendant's innocent." (*People v. Ellison*, *supra*, at pp. 1351-1352.)  The error in *Ellison* was stating that the defense was required to present evidence or argument to establish it would be reasonable to conclude the defendant was innocent.  As we discussed *ante*, the prosecutor in this

---

[3]    Defendant also contends that "[b]y insinuating that appellant had any duty to provide an alternative explanation for the events, the prosecutor's argument also violated appellant's federal constitutional right to remain silent."  We disagree because the prosecutor told the jury the defendant did *not* have a duty to present an alternative explanation of the evidence.

11

case did not make that argument. Instead, he argued defendant could not defeat the prosecution case by offering interpretations of the evidence to induce unreasonable doubt.

In *Lloyd*, the Court of Appeal concluded the prosecution misstated the law when it equated "a not guilty verdict based on self-defense . . . as meaning the defendant must establish the defense to the point the jury considers his actions 'absolutely acceptable'" and stating "not guilty means the defendant is *innocent*." (*People v. Lloyd*, *supra*, 236 Cal.App.4th at p. 63.) The prosecution in this case did not make those errors, but accepted the burden of proof, acknowledged the defense need not present any evidence or argument, but cautioned the jury not to acquit based on unreasonable interpretations of the evidence. We therefore see no basis for concluding it likely the jury was misled or that counsel performed deficiently.

B. *Failure to Give Accomplice Instructions*

Defendant contends the trial court committed prejudicial error by failing to instruct the jury sua sponte "to determine whether Harris was an accomplice, and if so, to treat his statements with caution and to credit his statements implicating appellant in the shooting only if they were corroborated." We disagree.

Defense counsel withdrew its request for a jury instruction on the need to corroborate the testimony of accomplices. (CALCRIM No. 335.) The trial court did not independently direct the jury on deciding whether Harris was an accomplice or receiving accomplice testimony. We review that omission de novo. (*People v. Guiuan* (1998) 18 Cal.4th 558, 569.) "Whether or not to give any particular instruction in any particular case entails the resolution of a mixed question of law and fact that . . . is however

12

predominantly legal.  As such, it should be examined without deference." (*People v. Waidla* (2000) 22 Cal.4th 690, 733.)

"'A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.  [¶]  An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given.'" (*People v. Tobias* (2001) 25 Cal.4th 327, 331 (*Tobias*), quoting § 1111.)  "'In order to be an accomplice, the witness must be chargeable with the crime as a principal [citation] and not merely as an accessory after the fact [citations].  [Citation.]'  [Citation.]  Principals include those who 'directly commit the act constituting the offense' as well as those who 'aid and abet in its commission. . . .'" (*People v. Felton* (2004) 122 Cal.App.4th 260, 268.)  "An aider and abettor . . . must 'act with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense.'  [Citation.]" (*People v. Mendoza* (1998) 18 Cal.4th 1114, 1123.)  "'[W]hen there is sufficient evidence that a witness is an accomplice, the trial court is required on its own motion to instruct the jury on the principles governing the law of accomplices,' including the need for corroboration. [Citations.]" (*Tobias*, *supra*, at p. 331.)

In this case, the accomplice instructions were not required because there was no substantial evidence Harris knew of defendant's intent to commit the murder.  (*People v.*

13

*Boyer* (2006) 38 Cal.4th 412, 466 ["The court need give such [accomplice] instructions only where there is substantial evidence that the witness was an accomplice"].) Harris testified he arrived at the party, left to buy beer, and returned to find the victim and another person involved in an altercation in the apartment. He said he did not know or could not identify the two people involved in the argument. He testified that he went to a back room in the apartment with friends as the altercation moved outside. He was not present for the shooting and did not see defendant involved in the altercation before or after it moved outside. Thus, the only evidence linking Harris to defendant's crime was testimony that he belonged to the same gang, was present at the same party, agreed to give defendant a ride after the shooting, and did not disclose to the police when stopped that they had been present at the scene of the shooting.[4] We conclude that evidence is too speculative to be a basis for concluding Harris perpetrated, planned, encouraged, or instigated the murder. "Substantial evidence is 'evidence sufficient to "deserve consideration by the jury," not "whenever *any* evidence is presented, no matter how weak."' [Citation.]" (*People v. Lewis* (2001) 26 Cal.4th 334, 369.) Consequently, the court did not err in failing to give accomplice instructions.

C. *Cumulative Effect of Errors*

Defendant contends "[t]he prejudice flowing from the prosecutor's repeated misdescription of the burden of proof only served to increase the likelihood that the error

---

[4] Defendant points out Butler testified some of the people in the back room went outside and observed the shooting. However, Butler did not identify Harris as one of those people and Harris testified he went *into* the back room, not outside, when the people involved in the altercation were leaving the apartment.

14

in failing to instruct on accomplice testimony prejudiced appellant." He contends the cumulative effect of these errors violated his due process rights by rendering his trial fundamentally unfair. Having found no errors, there could be no cumulative effect. (See *People v. Kipp* (2001) 26 Cal.4th 1100, 1132.)

D. *Cruel and Unusual Punishment*

Defendant contends his sentence of 50 years to life in prison is a grossly disproportionate punishment. He bases his argument on United States Supreme Court decisions that restrict, on Eighth Amendment grounds, the imposition of "mandatory life without parole for those under the age of 18 at the time of their crimes." (*Miller v. Alabama* (2012) 567 U.S. ___ [132 S.Ct. 2455, 2460]; see also *Graham v. Florida* (2010) 560 U.S. 48; *Roper v. Simmons* (2005) 543 U.S. 551.)

Defendant acknowledges he was over 20 years old at the time of his offense and therefore not a juvenile, but argues the rationale of *Roper*, *Graham*, and *Miller* applies equally well to defendants who are 20 years old.[5] "'Drawing the line at 18 years of age is subject . . . to the objections always raised against categorical rules,'" nevertheless, that "'is the point where society draws the line for many purposes between childhood and adulthood.' [Citations.] . . . We respect the line our society has drawn and which the United States Supreme Court has relied on for sentencing purposes, and conclude [defendant's] sentence is not cruel and/or unusual." (*People v. Abundio* (2013) 221

---

[5]    Defendant acknowledges the Court of Appeal has rejected his argument and raises the issue to challenge the current state of the law and preserve the issue for federal review.

15

Cal.App.4th 1211, 1220-1221, as mod. on rehg. den. Jan. 3, 2014.)  We conclude the sentence must be affirmed.

## III

## DISPOSITION

We affirm the judgment and the sentence.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH_____

J.

We concur:

RAMIREZ_____

P. J.

CODRINGTON_____

J.